UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TACTICAL SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>REAL ACTION PAINTBALL, INC., et al.,<br><br>Defendants. | Case No. 14-cv-04050-MEJ<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 27 |

## I.  INTRODUCTION

On September 5, 2014, Plaintiff United Tactical Systems, LLC's ("Plaintiff") brought the instant trademark infringement action against Defendants Real Action Paintball, Inc. ("RAP") and K.T. Tran (collectively, "Defendants").  Pending before the Court is Plaintiff's Ex Parte Motion for Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC") re Preliminary Injunction.  Dkt. No. 27.  Having considered Plaintiff's motion, the Court hereby DENIES the request for an ex parte TRO and GRANTS the request for an OSC hearing regarding issuing a preliminary injunction.

## II.  BACKGROUND

Plaintiff manufactures proprietary projectiles that are designed to allow individuals engaged in law enforcement, military, and private security to use less than lethal force to prevent crimes.  Compl. ¶ 8, Dkt. No. 1.  These projectiles are similar to paintballs, but are made of plastic (as opposed to gelatin) and contain an irritant powder (as opposed to paint) that acts similar to pepper spray.  *Id.*  Plaintiff acquired the assets of Advanced Tactical Ordnance Systems, LLC ("ATO") on August 8, 2014.  Compl. ¶ 2, Dkt. No. 1.  Previously, ATO had acquired all of the

1  assets of PepperBall Technologies, Inc. on January 9, 2012. *Id.* Plaintiff and its predecessors
2  have sold and continue to sell PepperBall® Projectiles and related PepperBall® branded
3  equipment to customers across the United States and around the world. *Id.*
4        RAP sells primarily through its interactive website which is capable of accepting orders
5  from individuals all over the world. *Id.* ¶ 3. Evans is the chief executive officer and a major
6  owner of RAP. *Id.* ¶ 4. RAP sends roughly one email solicitation per week to a list that it
7  maintains. *Id.* ¶ 3. Those emails contain numerous links that if clicked, take the recipient to
8  Defendant's website for the specific purpose of selling various products offered for sale by
9  Defendant to the recipient thereof. *Id.*
10       In September 2012, ATO filed suit in the District Court for the Northern District of Indiana
11 and obtained a temporary restraining order against Defendant Real Action Paintball, Inc.
12 ("Defendant"). Mot. at 6. ATO's suit was based on email blasts Defendant sent in August 2012
13 stating among other things that: (i) PepperBall Technologies, Inc. was out of business; (ii)
14 Defendant had acquired PepperBall Technologies' formulas and manufacturing equipment; and
15 (iii) Defendant's "Less Lethal" rounds were being made on the same equipment used by
16 PepperBall Technologies. *Id.* at 4. The Indiana Court issued a preliminary injunction in ATO's
17 favor enjoining Defendant from selling certain projectiles that ATO claimed infringed on its
18 trademark. *Id.* at 7. Defendant appealed the preliminary injunction and the court's determination
19 of jurisdiction over it, and the Seventh Circuit Court of Appeals found that Indiana lacked
20 personal jurisdiction over Defendant and ordered the preliminary injunction vacated and case
21 dismissed. *Id.* Plaintiff now brings this suit "to preserve the injunctive relief ATO already
22 obtained."

### III. LEGAL STANDARD

23
24       The analysis for granting a temporary restraining order is "substantially identical" to that
25 for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d
26 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he
27 is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
28 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

United States District Court
Northern District of California

public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the plaintiff may demonstrate that serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A "serious question" is one on which the plaintiff has "a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 21 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

A TRO may be issued without notice to the adverse party or its counsel only if : "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Civil Local Rule 65-1(b) provides that "[u]nless relieved by order of a Judge for good cause shown, on or before the day of an ex parte motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party."

The United States Supreme Court has explained that the circumstances justifying the issuance of an ex parte temporary restraining order are extremely limited:

> The stringent restrictions imposed ... by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974) (internal citation omitted).

Consistent with the overriding concern articulated by the Supreme Court, the Ninth Circuit has stated that there are "very few" circumstances justifying the issuance of an ex parte TRO.

3

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). For instance, notice may be excused where it "is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Id.* Or, notice may not be required where providing "notice to the defendant would render fruitless the further prosecution of the action" because the adverse party is likely to destroy evidence. *Id.*

In the context of trademark infringement, such cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing. *Reno Air*, 452 F.3d at 1131. To justify an ex parte proceeding on this ground, "'the applicant must do more than assert that the adverse party would dispose of evidence if given notice.'" *Id.* "A plaintiff must show that defendants would disregard a court order and dispose of the goods within the time it would take for a hearing and must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012).

## IV. DISCUSSION

Here, while Plaintiff has filed affidavits and evidence in support of its motion, Plaintiff has failed to "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as required for the issuance of an ex parte TRO. *See* Fed. R. Civ. P. 65(b). Accordingly, because Plaintiff has not shown immediacy of harm, Plaintiff has not shown good cause to be excused from the notice requirement set forth in Rule 65(b)(1). *See* Civ. L.R. 65-l(b).

As previously indicated, there are "very few circumstances justifying the issuance of an ex parte TRO." *Reno Air*, 452 F.3d at 1131 ("our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute") (quoting *Granny Goose Foods*, 415 U.S. at 439). Courts have generally confined ex parte injunctive relief to two situations: (1) where identity of the adverse party is unknown or because a known party cannot be located in time for a hearing; or (2) a "narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless

1   the further prosecution of the action." *Id.*

2         Here, Plaintiff does not argue that the identities of Defendants are unknown or that they
3   cannot be located in time for a hearing. Indeed, the complaint identifies each of the Defendants
4   and alleges that they are both citizens of California. Compl. ¶¶ 3-4. Thus, it is clear that Plaintiff
5   knows the identities of Defendants and knows where they can be found. Further, Plaintiff has not
6   submitted evidence demonstrating that "notice to the defendant[s] would render fruitless the
7   further prosecution of the action." *Reno Air*, 452 F.3d at 1131. Further, the Court finds that
8   Plaintiff's delay in requesting a TRO militates against its issuance. Parties spurred on by the
9   threat of or actual immediate irreparable harm file for TROs as quickly as possible to head or stave
10  it off. *See, e.g., In re Excel Innovations, Inc.*, 502 F.3d 1086, 1091 (9th Cir. 2007) (zero days
11  delay); *Lands Council v. Martin*, 479 F.3d 636, 638-39 (9th Cir. 2007) (one day delay); *Ranchers
12  Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S.D.A.*, 415 F.3d 1078, 1089 (9th
13  Cir. 2005) (six days delay); *Duke Energy Trading and Mktg., L.L.C. v. Davis*, 267 F.3d 1042,
14  1048 (9th Cir .2001) (two days delay). Here, Plaintiff has been aware of the alleged infringing
15  activities since at least 2012 and knew of the Indiana Court's decision, but did not immediately
16  seek leave to file the present motion at the time it filed its Complaint.

17        In sum, the Court finds that Plaintiff has failed to meet the *Reno Air* standard for issuing a
18  TRO under Rule 65(b)(1). Accordingly, Plaintiff's ex parte motion for a TRO is DENIED.
19  Plaintiff has not clearly shown that it will suffer immediate and irreparable injury, loss, or damage
20  before the adverse party can be heard in opposition. Specifically, Plaintiff failed to demonstrate
21  that advising Defendants of its TRO application and providing them with an opportunity to be
22  heard would "render fruitless the further prosecution of the action." *Reno Air*, 452 F.3d at 1131.

## V.  CONCLUSION

24        Based on the analysis above, Plaintiff's request for an ex parte TRO is DENIED.
25  Although Plaintiff is not entitled to an ex parte TRO, given the declarations submitted by Plaintiff
26  and the evidence attached thereto, the Court will construe Plaintiff's ex parte motion for a TRO as
27  a motion for preliminary injunction. Defendants may file any opposition to the requested
28  preliminary injunction by October 16, 2014, and Plaintiff may file a reply by October 23, 2014.

1 | The Court shall conduct a hearing on November 6, 2014.
2 | **IT IS SO ORDERED.**
3 |
4 | Dated: October 6, 2014
5 | _____
6 | MARIA-ELENA JAMES
  | United States Magistrate Judge