1

2

3

4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED TACTICAL SYSTEMS, LLC,          Case No. 14-cv-04050-MEJ

                    Plaintiff,
8                                            **ORDER RE: (1) MOTION TO DISMISS**
          v.                                 **COUNTERCLAIMS; (2) MOTION TO**
9                                            **STRIKE COUNTERCLAIMS; AND (3)**
     REAL ACTION PAINTBALL, INC., et al.,    **MOTION TO TRANSFER BOND**
10
                    Defendants.
11                                           Re: Dkt. Nos. 158, 159, 162

12   AND RELATED ACTION AND CROSS
     ACTION
13

14

15                              INTRODUCTION

16        Real Action Paintball, Inc. and its principal, K.T. Tran (collectively "Real Action")[1] filed

17   18 counterclaims in this matter (First Am. Counterclaim ("FACC"), Dkt. No. 152), which United

18   Tactical Systems, LLC ("UTS") and related Counter-Defendants (collectively with UTS,

19   "Counter-Defendants")[2] now seek to dismiss or strike on a multitude of different grounds.  *See*

20   Mot. to Dismiss Brief ("MTD Br."), Dkt. No. 160; Mot. to Strike Brief ("MTS Br."), Dkt. No.

21   163.[3]  Real Action also filed a motion asking the Court to transfer the bond held by the Northern

22

23   _____

     [1] The Court refers to both K.T. Tran and Real Action Paintball, Inc. as "Real Action" as there is no
24   material difference between the company and its principal for purposes of this Order.  Counter-
     Defendants also sometimes refer to Real Action as "RAP4."
25
     [2] "Counter-Defendants" refers to Advanced Tactical Ordnance Systems, LLC, Perfect Circle
26   Projectiles LLC, Gary Gibson, Tiberius Arms, LLC, Tactical Air Games, Inc., Tyler Tiberius,
     Michael Blumenthal, David Piell, United Tactical Systems, LLC, United Tactical Systems
27   Holdings, LLC ("UTSH"), and United Tactical Systems Intermediate Holdings, LLC ("UHSIH").

28   [3] As indicated, the Court cites Counter-Defendants' Briefs rather than their Motions; Counter-
     Defendants filed their Motions separately from their points and authorities.  In the future, all

United States District Court
Northern District of California

District Court of Indiana, which previously issued a temporary restraining order ("TRO") against Real Action.  *See* Mot. to Transfer Bond ("Transfer Mot."), Dkt. No. 158.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' Motions and **DENIES AS MOOT** Real Action's Transfer Motion for the following reasons.

### BACKGROUND

UTS and Real Action sell irritant filled projectiles.  Compl. ¶ 2, Dkt. No. 1; FACC ¶¶ 20, 29.  Typically used by law enforcement or military, these projectiles are non-lethal capsules that contain a pepper substance and can be shot like paintballs.  FACC ¶ 19.  UTS's predecessor in interest, Advanced Tactical Ordnance Systems, LLC ("ATO"), an Indiana corporation, previously brought suit against Real Action, a California company, in a case styled *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc., et al.*, Case No. 12-00296-JVB-RBC (N.D. Ind.) (the "Indiana Action"), alleging Real Action infringed on its "PepperBall" trademark by making statements implying that Real Action sold PepperBall projectiles, among other things.  Compl. ¶¶ 1, 36; FACC ¶¶ 30-31, 48.  ATO alleges it acquired PepperBall Technologies, Inc. in 2012, procuring the use of the PepperBall mark, among other things.  Compl. ¶ 2.  ATO obtained a temporary restraining order and later a preliminary injunction in the Indiana Action to stop Real Action's use of the PepperBall mark and related acts by Real Action.  Compl. ¶ 36; FACC ¶¶ 36, 51.

ATO also sued Conrad Sun, Sun LLC, and Apon in the Indiana Action.  FACC ¶¶ 86-87.  Apon manufactured irritant projectiles, while Conrad Sun and his company Sun LLC had previously helped broker a deal for the sale of irritant filled projectiles from Apon to Real Action.  Compl. ¶¶ 11, 12, 14-16; FACC ¶ 28.  Real Action alleges ATO settled with Sun, Sun LLC, and Apon in the Indiana Action "on abusive terms," which made it so that Real Action was unable to acquire the irritant projectiles it contracted for from Sun LLC and Apon, and consequently harmed Real Action's position in the marketplace.  FACC ¶ 96.

parties are admonished to comply with Civil Local Rule 7-2(b), which requires a motion, notice of motion, and the related points and authorities be filed in "one document."  *See* Civil L.R. 7-2(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Meanwhile, Real Action challenged whether the Northern District of Indiana (the "Indiana

2  Court") properly invoked personal jurisdiction over it. *Id.* ¶ 44. The Court of Appeals for the

3  Seventh Circuit confirmed the Indiana Court did not have personal jurisdiction over Real Action,

4  and the Indiana Court consequently dismissed the suit. *Id.*; *see also Advanced Tactical Ordnance*

5  *Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014).

6    The case has found new residence in this Court. Real Action filed the first suit, styled as

7  *Real Action Paintball, Inc. v. Advanced Tactical Ordnance Systems, LLC et al.*, Case No. 14-

8  2435-MEJ (N.D. Cal.) (the "ATO Case"). It asserted 17 claims against ATO, including claims for

9  wrongful injunction, declaratory relief, unfair competition, and restraint of trade. Real Action also

10  sued attorneys Michael Blumenthal and David Piell, who represented ATO in the Indiana Action,

11  and the persons and entities who had formed ATO. ATO Case, Dkt. No. 1. Specifically, Real

12  Action sued Gary Gibson and Perfect Circle Projectiles LLC as well as Tyler Tiberius and

13  Tiberius Arms LLC. *Id.* Gibson owns or owned Perfect Circle, which in turn owns or owned 50%

14  of ATO. FACC ¶¶ 23, 25. Perfect Circle also once supplied irritant projectiles to Pepperball

15  Technologies. *Id.* ¶ 20. Tiberius is or was a co-owner of Tiberius Arms, which Real Action

16  alleges owns or owned the other 50% of ATO. *Id.* ¶¶ 24-25. Finally, Real Action also sued

17  Robert N. Trgovich in his capacity as clerk of the United States District Court for the Northern

18  District of Indiana. ATO Case, Dkt. No. 1; *see also* FACC ¶ 11.

19    After Real Action filed suit in this Court, UTS was formed and purchased ATO and the

20  PepperBall mark. Compl. ¶ 2. UTS then filed the present lawsuit against Real Action (the "UTS

21  Case"), and moved for a temporary restraining order. Dkt. No. 27. The Court denied that motion

22  but construed it as a motion for a preliminary injunction. Dkt. No. 34. The Court ultimately

23  granted in part and denied in part UTS's motion for a preliminary injunction, which enjoined Real

24  Action from using the PepperBall name to refer to its irritant projectiles. Dkt. No. 85. Real

25  Action subsequently counter-sued UTS for various claims (many of which are similar to those

26  asserted against ATO), as well as Blumenthal and Piell for misappropriation of trade secrets

27  related to information published with the filing of UTS's motion for a temporary restraining order.

28  Dkt. No. 51.

3

United States District Court
Northern District of California

The Court subsequently consolidated the ATO and UTS actions under the UTS Case. Dkt. No. 140. In light of this consolidation, the Court denied Real Action's Motion to Amend its Complaint, and denied without prejudice UTS's and ATO's pending Motions to Dismiss and Motions to Strike,[4] but granted the parties leave to amend their pleadings. *Id.*

On June 16, 2015, Real Action filed its First Amended Counterclaims against Counter-Defendants as well as Trgovich. Dkt. No. 152. Real Action brings a total of 18 claims:

1. Wrongful Injunction (under Federal law of the Seventh Circuit) – ATO and Trgovich
2. Wrongful Injunction (under Indiana law) – ATO and Trgovich
3. Wrongful Seizure (under Federal law) – ATO, Gibson, Tiberius, and Trgovich
4. Abuse of Process (under Indiana law) – ATO, Gibson, Tiberius, Blumenthal, and Piell
5. Malicious Prosecution (under Indiana law) – ATO, Gibson, Tiberius, Blumenthal, and Piell
6. Intentional Interference with Contractual Relations (under Indiana and California laws) – ATO, Perfect Circle, Gibson, Tiberius, Tactical Air,[5] Tiberius Arms, Blumenthal, and Piell
7. Intentional or Negligent Interference with Prospective Economic Advantage (under Indiana and California laws) – ATO, Gibson, Tiberius, Blumenthal, and Piell
8. Tortious Conversion (under Indiana and California laws) – ATO, Gibson, and Blumenthal
9. Criminal Conversion (under Indiana law) – ATO, Gibson, and Blumenthal
10. False Designation of Origin (under 15 U.S.C. § 1125) – ATO, Gibson, Tiberius, and UTS
11. Monopoly and Combination in Restraint of Trade (under the Sherman Act) – ATO, Perfect Circle, and Tiberius Arms
12. Combination in Restraint of Trade (under California's Cartwright Act) – ATO, Perfect Circle, and Tiberius
13. Unfair Competition and False Advertising (under California Business and Professions Code sections 17200 and 17500) – ATO, Perfect Circle, and UTS

---

[4] These Motions include the following: ATO Case, Dkt. No. 49 (Motion to Dismiss); ATO Case, Dkt. No. 50 (Motion to Strike); UTS Case, Dkt. No. 93 (Motion to Strike Counterclaim); and UTS Case, Dkt. No. 101 (Motion to Dismiss Counterclaim).

[5] Real Action's FACC adds Tactical Air Games, Inc. or "Tactical Air" as a Counter-Defendant. Real Action alleges "in late 2011, Gibson, Tiberius, Perfect Circle, Tactical Air and Tiberius Arms, LLC formed [ATO,]" and "Tiberius is or was at all relevant times a manager and co-owner of Tiberius Arms, LLC and Tactical Air." FACC ¶¶ 22, 24.

4

14. Declaratory Judgment of No Violation of the Lanham Act nor of Common Law Trademark nor Trade Dress – ATO and UTS
15. Declaratory Judgment of No Trade Secret Misappropriation – ATO and UTS
16. Unjust Enrichment (under Indiana law) – ATO and Perfect Circle
17. Conspiracy (under Indiana and California laws) – ATO, Perfect Circle, Gibson, Tactical Air, Tiberius Arms, Tiberius, Blumenthal, and Piell
18. Successor Liability – UTS, UTSIH, and UTSH[6]

After filing the FACC, Real Action filed a Second Motion for the Court to Accept and Hold the Bond from the Indiana Action. Dkt. No. 158. The Court previously dismissed without prejudice Real Action's First Motion to Accept and Hold the Bond, finding the motion premature as "the Court ha[d] not yet determined its role in assessing the Northern District of Indiana's earlier injunction against Real Action." Dkt. No. 148. On October 28, 2015, Counter-Defendants filed a Notice stating the Indiana Court released the bond, presumably back to ATO. Dkt. No. 184. Real Action has not responded to this notice.

This Order considers the Court's power to hear Real Action's Wrongful Injunction counterclaims under the circumstances and also considers Counter-Defendants' Motions to Dismiss Real Action's Counterclaims pursuant to Rule 12(b)(6) or alternatively to Strike those counterclaims pursuant to California Code of Civil Procedure section 425.16, California's anti-SLAPP law. *See* Dkt. Nos. 159 (Mot. to Dismiss); 162 (Motion to Strike) (filed July 9, 2015).

## LEGAL STANDARDS

### A.     Motion to Dismiss

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial

---

[6] Real Action's FACC also added as Counter-Defendants UTSH and UHSIH. Real Action alleges "Upon information and belief, ATO has ceased operations and transferred its assets and business to UTS, UTSH, and UTSIH." FACC ¶¶ 47. Additionally, Real Action's eighteenth counterclaim is mislabeled as its "Nineteenth Cause of Action."

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.      Anti-SLAPP Motion to Strike**

California Code of Civil Procedure section 425.16 provides a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 235 (1999) (citation and footnote omitted).

1    This type of nonmeritorious litigation is referred to under the acronym "SLAPP," or "Strategic

2    Lawsuit Against Public Participation." *Id.* The archetypal SLAPP complaint is a "generally

3    meritless suit[ ] brought by large private interests to deter common citizens from exercising their

4    political or legal rights or to punish them for doing so." *Wilcox v. Sup. Ct.*, 27 Cal. App. 4th 809,

5    816 (1994) (disapproved on other grounds) (citation omitted). The anti-SLAPP statute provides:

6
         A cause of action against a person arising from any act of that
7        person in furtherance of the person's right of petition or free speech
         under the United States Constitution or the California Constitution
         in connection with a public issue shall be subject to a special motion
8        to strike, unless the court determines that there is a probability that
         the plaintiff will prevail on the claim.
9

10   Cal. Civ. Proc. Code § 425.16(b)(1). Section 425.16 thus "allows a court to strike any cause of

11   action that arises from the defendant's exercise of his or her constitutionally protected free speech

12   rights or petition for redress of grievances." *Flatley v. Mauro*, 39 Cal. 4th 299, 311-12 (2006).

13        California's anti-SLAPP statute is available to litigants in federal court. *In re NCAA*

14   *Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013), *cert.*

15   *dismissed sub nom. Elec. Arts Inc. v. Keller*, 135 S. Ct. 42 (2014); *see also Batzel v. Smith*, 333

16   F.3d 1018, 1025-26 (9th Cir. 2003). While section 425.16 "does not apply to federal law causes

17   of action," it does apply to "state law claims that federal courts hear pursuant to their diversity

18   jurisdiction[.]" *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2, 901 (9th Cir. 2010).

19        In ruling on a motion to strike brought under Section 425.16, the trial court must engage in

20   a two-step process that involves shifting burdens. *Kearney v. Foley & Lardner LLP,* 590 F.3d

21   638, 648 (9th Cir. 2009). First, the defendant must make an initial prima facie showing that the

22   plaintiff's challenged cause of action "arises from" an act in furtherance of the defendant's rights

23   of petition or free speech. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006). "A cause of action

24   'arising from' [a party's] litigation activity may appropriately be the subject of an [anti-SLAPP

25   motion to strike]." *Id.* (citation omitted). Such activity "includes communicative conduct such as

26   the filing, funding, and prosecution of a civil action." *Id.* (citation omitted).

27        Second, "[i]f the court determines that the defendant has met this burden, it must then

28   determine whether the plaintiff has demonstrated a probability of prevailing on the merits."

7

*Kearney*, 590 F.3d at 648 (citation omitted); *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). "'Reasonable probability' in the anti-SLAPP statute has a specialized meaning" and "requires only a 'minimum level of legal sufficiency and triability.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 438 n.5 (2000)). "Indeed, the second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong." *Id.* (citations omitted). "'Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Id.* at 599 (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)); *see also Navellier v. Sletten*, 29 Cal. 4th 82, 93 (2002) (the statute "subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim."). "[A] reviewing court 'should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1183 (9th Cir. 2013) (Wardlaw, J. and Callahan J. concurring in the denial of rehearing en banc) (emphasis in original) (quoting *Vargas v. City of Salinas*, 46 Cal. 4th 1, 20 (2009)). "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Navellier*, 29 Cal. 4th at 89 (emphasis in original).

## PRELIMINARY ISSUES

A number of substantive legal issues have arisen in the context of assessing Counter-Defendants' Motions, which the Court addresses as a preliminary matter before discussing the individual counterclaims.

### A.      Federal Conflicts

As an initial matter, the Court notes that Real Action did not address the substance of Counter-Defendants' anti-SLAPP arguments as to its individual counterclaims. Instead, it has challenged the Counter-Defendants' anti-SLAPP motion on threshold legal grounds, first arguing the Court should not strike any claims under California's anti-SLAPP law until discovery is complete. MTS Opp'n at 9, Dkt. No. 172. In support, Real Action cites a case stating: "If a

United States District Court
Northern District of California

defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56." *Id.* at 10 (citing *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2009)).

Although there is some dispute about this issue within the Ninth Circuit and among the judges of our Court of Appeals itself, the Ninth Circuit has recently reiterated its long held assessment that section 425.16 applies in federal courts in the absence of "direct collusion" between the state enactment and the Federal Rules of Civil Procedure 8, 12, and 56. *See Makaeff*, 736 F.3d at 1181-84; *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999). The Ninth Circuit has found that while California's "[a]nti-SLAPP statute and the Federal Rules do, in some respects, serve similar purposes, namely the expeditious weeding out of meritless claims before trial . . . . there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Newsham*, 190 F.3d at 972 (citation omitted). Here, the Court finds no conflict between the Federal Rules and California's anti-SLAPP law. As Counter-Defendants state in their Reply, their Motion to Strike "only attacks the pleadings and submits facts that are judicially noticeable, . . . us[ing] the tools available on a motion made under Federal Rule of Civil Procedure 12(b)(6)." MTS Reply at 7, Dkt. No. 176. The Court's analysis proceeds on the same lines, without need for more discovery.[7] Accordingly, Real Action's request that the Court wait to decide Counter-Defendants' anti-SLAPP motion until after discovery is **DENIED**.

**B.    Mixed Claims Asserted Under Both California and Indiana Law**

Real Action contends that California's anti-SLAPP law applies only to California state law claims and not claims grounded in the law of another state. MTS Opp'n at 7. As such, Real Action asserts its claims brought under both California and Indiana laws may not be stricken under

---

[7] "[T]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim, not to determine whether the defendant actually committed the relevant tort." *Makaeff*, 736 F.3d at 1186 (quotation and internal marks omitted). The "probability" inquiry thus "asks a purely legal question: 'whether the facts alleged . . . support a claim' that survives a motion to strike." *Id.* (quotation omitted).

United States District Court
Northern District of California

1    California's anti-SLAPP law.  *Id.* at 7-8.  Real Action also argues "if the Indiana allegations in a

2    mixed claim survive—and they do because the Anti-SLAPP statute has no authority to strike

3    Indiana claims—then the claim survives as a whole."  *Id.*

4          Although neither the California Supreme Court nor the Ninth Circuit has addressed the

5    exact issue posed by Real Action, the Second Circuit Court of Appeals recently considered the

6    issue and found California's anti-SLAPP law could apply to other states' substantive causes of

7    action.  *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144-48 (2d Cir. 2013).  In that

8    case, Liberty originally filed a malicious prosecution claim in California state court, which was

9    then removed to federal court and subsequently transferred to New York.  *Id.* at 142.  The

10   defendants brought a motion to strike under California's anti-SLAPP law, which the New York

11   District Court denied, finding that New York substantive law would apply to plaintiff's malicious

12   prosecution claim, and therefore California's anti-SLAPP law could not be used to strike the

13   claim.  *Id.* at 143.  The Second Circuit disagreed.  The Court of Appeals noted that federal courts

14   are required to apply the choice-of-law rules of the state in which the court sits, but since the case

15   was originally filed in California and later transferred to the Eastern District of New York

16   pursuant to 28 U.S.C. § 1404(a), the federal court in New York was required to act as if, for the

17   purpose of determining the applicable state rules of decision, it was sitting in California.  *Id.* at

18   153.  Under that lens, the Second Circuit stated it had "no reason to doubt that a California state

19   court would apply California's anti-SLAPP rule as a matter of its own procedural rules, even if it

20   applied New York substantive law to the merits of the malicious prosecution action."  *Id.* at 154.

21   It further noted that the text of California's anti-SLAPP law was not limited to causes of action

22   that arose under California law and consequently found the District Court erred by concluding

23   California's anti-SLAPP law would not apply merely because New York substantive law

24   governed the cause of action.  *See also Makaeff*, 736 F.3d at 1184 n.3 (citing *Liberty* with approval

25   for proposition that California's anti-SLAPP law confers substantive rights under *Erie* doctrine).

26          This case presents a simpler question.  The Court sits in California and this case was filed

27   in California; as such, the Court applies California choice-of-law rules.  The Second Circuit's

28   conclusion that California courts would apply the California anti-SLAPP law even where the

*United States District Court*
*Northern District of California*

10

cause of action is based on another state's substantive law appears reasonable to this Court.  While Real Action cites case law establishing that California's anti-SLAPP law applies to California state claims (MTS Opp'n at 7) (a self-evident proposition), these cases do not conflict with the *Liberty* court's analysis or show that California's anti-SLAPP law should not apply to other state's claims.  While the *Liberty* court recognized that, "[t]o be sure, the Due Process Clause and the Full Faith and Credit Clause, among other constitutional provisions, provide some limitations to the application of state conflict-of-law rules in ways that would frustrate causes of action defined by other states' laws," having carefully reviewed and considered the counterclaims and legal issues present in this case, the Court finds no reason indicating this case "approach[es] those constitutional boundaries."  718 F.3d at 155.

Accordingly, the Court agrees with the Second Circuit and holds that California's anti-SLAPP law can be applied to Real Action's counterclaims brought pursuant to Indiana law.  In considering Counter-Defendants' challenges to Real Action's counterclaims, the Court will apply California's anti-SLAPP law to claims asserting violations of Indiana law.

**C.     "Mixed" Causes of Action Arising from Protected and Unprotected Activities**

The other issue implicitly raised by the parties' arguments is whether California's anti-SLAPP law applies to a cause of action that involves claims arising from both protected and unprotected activities.  Counter-Defendants assert that "[w]here a single cause of action alleges both acts protected under the statute and unprotected acts, the entire cause of action may be stricken under California Code of Civil Procedure section 425.16[,]" arguing that "RAP4 'cannot frustrate the purpose of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action.'"  MTS Br. at 12 (quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 308 (2001)).  Real Action also raises this issue, asserting "under California law if any portion of a claim has merit, the Court may not strike it under the Anti-SLAPP statue [sic]."  MTS Opp'n at 7-8 (citing *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 106 (2004)).  Although Real Action raises this argument in the context of analyzing its mixed Indiana and California law claims rather than challenging Counter-Defendants' assessment of whether its claims arise out of a protected activity,

11

1   this issue of how the Court should consider a cause of action alleging claims arising from both

2   protected and unprotected activities must be assessed before reviewing those individual claims.

3           Specifically, in several of its counterclaims, Real Action asserts wrongdoing by the

4   Counter-Defendants both for bringing and litigating the Indiana Action against Real Action as

5   well as for legal violations associated with the settlement agreements with Sun LLC and Apon.

6   The Court agrees with Counter-Defendants that actions arising from their litigation of the Indiana

7   Action are protected activities.  *See Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291

8   (2006) ("[t]he filing of lawsuits is an aspect of the First Amendment right of petition." (quotation

9   omitted)).  However, the settlement agreements with Sun LLC and Apon are not necessarily

10  protected activities.  The California Supreme Court has warned that a cause of action may be

11  "triggered" by protected activity without arising from it.  *City of Cotati v. Cashman*, 29 Cal. 4th

12  69, 78 (2002).  "In the anti-SLAPP context, the critical consideration is whether the cause of

13  action is *based on* the defendant's protected free speech or petitioning activity."  *Navellier*, 29 Cal.

14  4th at 89 (citation omitted; emphasis in original).  But the "fact that protected activity may lurk in

15  the background—and may explain why the rift between the parties arose in the first place—does

16  not transform [such a] dispute into a SLAPP suit."  *In re Episcopal Church Cases*, 45 Cal. 4th

17  467, 478 (2009), *as modified* (Feb. 25, 2009); *see also Optional Capital, Inc. v. Das Corp.*, 222

18  Cal. App. 4th 1388, 1399 (2014) ("[C]onduct is not automatically protected merely because it is

19  related to pending litigation").  The Court considers whether Real Action's allegations concern

20  protected or non-protected in the context of the individual claims, but the issue remains as to how

21  the Court should view Real Action's counterclaims that challenge both protected activities as well

22  as non-protected activities.

23          California "[a]ppellate courts have wrestled with the application of the anti-SLAPP law

24  where . . . a single cause of action includes multiple claims, some protected by that law and some

25  not."  *Cho v. Chang*, 219 Cal. App. 4th 521, 526 (2013).  The anti-SLAPP law is silent on the

26  matter, and California's appellate courts are split on how to apply the law to causes of action

27  dealing with protected and unprotected activities.  *See id.* (collecting cases).  A case cited by Real

28  Action states "once a plaintiff shows a probability of prevailing on any part of its claim, the

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    plaintiff *has established* that its cause of action has some merit and the entire cause of action

2    stands." *Mann*, 120 Cal. App. 4th at 106 (emphasis in original).  In light of the *Mann* rule, other

3    courts have concluded that an entire cause of action may be properly stricken where any part is

4    protected and not merely "incidental" to an unprotected claim, and a plaintiff fails to show the

5    requisite probability of success on the protected claim.  *See Haight Ashbury Free Clinics, Inc. v.*

6    *Happening House Ventures*, 184 Cal. App. 4th 1539, 1554 (2010).  Another court, however, found

7    that where a plaintiff has established probability of prevailing as to allegations of nonprotected

8    activity but not as to allegations of protected activity, the protected activity allegations "may be

9    parsed from the causes of action and stricken, while the allegations related to non-protected

10   activity may remain as part of the complaint."  *City of Colton v. Singletary*, 206 Cal. App. 4th 751,

11   773 (2012).  Subsequent courts have disagreed with the *Colton* court, interpreting California

12   Supreme Court precedent that did not involve mixed causes of action to conclude that if the

13   plaintiff could show "a probability of prevailing on *any part of* [*her*] *claim*, the cause of action is

14   not meritless and will not be stricken."  *Burrill v. Nair*, 217 Cal. App. 4th 357, 382 (2013), *review*

15   *denied* (Oct. 2, 2013) (emphasis and alteration in original) (relying on *Oasis W. Realty, LLC v.*

16   *Goldman*, 51 Cal. 4th 811, 820 (2011)).  The California Supreme Court's analysis in *Oasis* did not

17   directly address the issue here or in the cases above, but it nonetheless cited *Mann* with approval,

18   stating "[i]f the plaintiff 'can show a probability of prevailing on any part of its claim, the cause of

19   action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing

20   on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the

21   entire cause of action stands.'"  *Oasis*, 51 Cal. 4th at 820 (emphasis in original) (quoting *Mann*,

22   120 Cal. App. 4th at 106).

23          One recent California Court of Appeal challenged the foregoing viewpoints, refusing to

24   read the statement in *Oasis* "so broadly" and finding that "the better view . . . is that the trial court

25   may strike the allegations in the cross-complaint attacking the protected activity while allowing

26   the unprotected theories to remain."  *Cho*, 219 Cal. App. 4th at 523, 527.  Thus, in the *Cho* court's

27   view, a plaintiff should not be required to make a showing of probability of prevailing on

28   unprotected claims.  *Id.* at 527 n.2.  In doing so, the *Cho* court suggested a court could extract the

13

protected claims from the non-protected claims before analyzing whether a plaintiff had shown a probability of prevailing on those claims.  *Id.*  The court reiterated "the guiding principle in applying the anti-SLAPP statute to a mixed cause of action case," which is that "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"  *Id.* at 527 (citing *Fox Searchlight Pictures*, 89 Cal. App. 4th at 308).  But in the *Cho* court's view, "[s]triking the claims that invoke protected activity but allowing those alleging nonprotected activity to remain" was consonant with that principle and the overall purposes of a motion to strike.  *Id.*

Subsequent courts have disagreed with the approaches taken in both *Colton* and *Cho*.  For instance, in *Baral v. Schnitt*, the Court of Appeal considered "whether section 425.16 (anti-SLAPP statute) authorizes excision of allegations subject to the anti-SLAPP statute (protected activity) in a cause of action that also contains meritorious allegations not within the purview of that statute (mixed cause of action)."  233 Cal. App. 4th 1423, 1427 (2015).  This issue arose in the following context: after the trial court struck two defamation causes of action based solely on allegations regarding privileged communications made in a prelitigation fraud investigation, the plaintiff amended the complaint and included the same allegations in otherwise colorable causes of action for breach of fiduciary duty, constructive fraud, and declaratory relief.  *Id.* at 1430.  The trial court held the anti-SLAPP statute could not be used to selectively strike the allegations of privileged activity, and the Court of Appeal affirmed.  *Id.* at 1443.

In doing so, the *Baral* court again relied on *Mann* and *Oasis*, siding against *Colton* and *Cho* and with *Burrill* and another California Court of Appeal case, *Wallace v. McCubbin*, 196 Cal. App. 4th 1169 (2011).  *Baral* relied on *Wallace* for its finding that "*Oasis* clearly holds that, where a cause of action (count) is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least one of the asserted bases for liability."  *Baral*, 233 Cal. App. 4th at 1439 (quoting *Wallace*, 196 Cal. App. 4th at 1211 ("Indeed, not only does *Oasis* permit the entirety of the cause of action to go forward, it precludes consideration of the merit of any other claims in the cause of action once a probability of prevailing is demonstrated as to one of them.")).  The *Baral* court further noted "the anti-SLAPP

14

statute states that it applies to a 'cause of action[,]'" and while the California Legislature amended the statute several times, it never saw fit to change this language to something that might permit the parsing allowed in *Cho* and *Colton*. *Id.* at 1442. Consequently, "[i]f the better rule is to apply the statute to less than a cause of action, enacting that rule is a legislative function, not a judicial one." *Id.* Given these findings, the *Baral* court "conclude[d] that the balance tips in favor of allowing mixed causes of action containing potentially meritorious claims to proceed unencumbered by the special procedures of the anti-SLAPP statute." *Id.* at 1443.

The California Supreme Court granted review of the *Baral* decision on May 13, 2015. *Baral v. Schnitt*, 347 P.3d 988 (Cal. 2015). The Supreme Court will thus decide the following issue: "Does a special motion to strike under Code of Civil Procedure section 425.16 authorize a trial court to excise allegations of activity protected under the statute when the cause of action also includes meritorious allegations based on activity that is not protected under the statute?" Anti-SLAPP Litigation § 5:12, "'Mixed' cause of action?" (Updated July 2015). This leaves open considerable questions about how California's highest court will viewed mixed causes of actions.

The Court has carefully considered whether it should wait to decide some of these claims until the California Supreme Court weighs in on *Baral*, but the Court ultimately decides to proceed with the analysis using the well-established formula for federal courts to determine matters of state law. Where the state high court has not decided the matter, the Court's task is to "predict" how the state high court would rule. *Hayes v. Cty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011). "In other words, the federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past." 19 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4705 (2d ed.). In performing this task, the Court should consider the available reliable evidence, which may include "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quotation omitted). "The Court's task, in sum, is to make a conscientious prediction of what rule a state high court would adopt in the case before it, without regard to the Court's own view of what the best rule

may be." *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *7-8 (N.D. Cal. Oct. 2, 2014).

Having conducted a careful survey of California law and related treatises, the Court agrees with the thorough analysis of the *Baral* court.  California's legislature has maintained specific language in the anti-SLAPP statute, despite multiple amendments, such that the statute applies to a "cause of action" as a whole.  *See* Cal. Civ. Proc. Code § 425.16(b)(1).  Numerous courts have relied on this as well as the California Supreme Court's citation of *Mann* in *Oasis* to hold that where a cause of action is based on protected activity, the entire cause of action may proceed as long as the plaintiff shows a probability of prevailing on at least one of the asserted bases for liability.  If the legislature or California Supreme Court believed a different result was proper, the Court believes those bodies would have said as much.  As such, the Court agrees with *Baral* and concludes that Real Action's mixed causes of action containing potentially meritorious claims may proceed unencumbered by the special procedures of the anti-SLAPP statute.  *See also Kenne v. Stennis*, 230 Cal. App. 4th 953, 967-68 (2014) ("Under established authority, when a cause of action is based on both protected and unprotected activity, it is subject to the anti-SLAPP statute, unless the protected activity is merely incidental to the unprotected conduct." (citation omitted)).

## DISCUSSION – INDIVIDUAL COUNTERCLAIMS

Counter-Defendants have challenged each of Real Action's counterclaims under Rule 12(b)(6), California's anti-SLAPP law, or both.  This Order thus addresses each of Real Action's counterclaims and each of Counter-Defendants' related arguments below.[8]

---

[8] As noted above, Real Action opposed Counter-Defendants' Motion to Strike under California's anti-SLAPP law almost entirely on procedural grounds, rather than addressing the substance of each counterclaim or related challenge by Counter-Defendants.  Counter-Defendants argue that "[b]y adopting this risky strategy of relying only upon its procedural objections, RAP4 has waived arguments that its causes of action arise from Counter-Defendants' protected activity, namely the filing of and participation in the Indiana Action. RAP4 has further abandoned any arguments that these causes of action were adequately stated, or that it has a probability of prevailing on its claims." MTS Reply at 7-8.  Given the allegations in the FACC and the evidence already in the record, the Court will not find that Real Action has waived any arguments at this time.  However, Real Action and all parties are admonished that, in the future, failure to address argument in opposition can be considered a concession of the issue.  *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases and finding failure to address a claim in a party's opposition brief concedes the issue raised).

United States District Court
Northern District of California

**A.      Wrongful Injunction and Seizure Claims**

Real Action brings two Wrongful Injunction claims: (1) a claim based on federal law of the Seventh Circuit (Counterclaim 1) and (2) a claim based on Indiana law (Counterclaim 2). Counter-Defendants' Motion to Dismiss only challenges the Federal Wrongful Injunction claim, while they challenge both Wrongful Injunction claims under California's anti-SLAPP law.  Real Action's third claim is for Wrongful Seizure pursuant to 15 U.S.C. § 1116(d)(11).  Counter-Defendants challenge the Wrongful Seizure claim in their Motion to Dismiss as well as their Motion to Strike.  The Court considers these claims together as they address issues related to actions the Indiana Court took in the Indiana Action.

1.      Federal Wrongful Injunction Claim

As an initial matter, Counter-Defendants assert there is no federally recognized claim for Wrongful Injunction, and even if there were, only the court issuing the injunction should be permitted to hear it.  MTD Br. at 5.  Real Action disagrees, noting that Counter-Defendants have cited no case law in support of their arguments.  MTS Opp'n at 3.

28 U.S.C. § 1352 "grants jurisdiction to hear an 'action on a bond' executed pursuant to Rule 65(c), Fed. R. Civ. P. (security required for issuance of preliminary injunction)."  *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1166 (9th Cir. 1976), *cert. denied*, 431 U.S. 903 (1977); 28 U.S.C. § 1352 ("The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States, . . . .").  Section 1352 thus provides district courts with jurisdiction to hear federal wrongful injunction claims, as such an injunction requires the posting of a bond.  *See* Fed. R. Civ. P. 65(c).  A court may thus determine whether an injunction or seizure was lawful by the terms of the bond and the related orders of the issuing court.  *Buddy Sys.*, 545 F.2d at 1168 ("If a bond is posted, liability is limited by the terms of the bond or the order of the court that required the posting."); *see also Laux v. Chopin Land Assocs., Inc.*, 615 N.E.2d 902, 907 (Ind. App. 1993) (where claim of wrongful injunction was not raised before the court that issued the injunction, "liability on the bond [for wrongful injunction] is properly the subject of a separate action").

But a court's ability to exercise jurisdiction over a wrongful injunction claim comes with

United States District Court
Northern District of California

17

1    one critical limitation: "there is no jurisdiction under section 1352 over a suit . . . *independent of*

2    *the security instrument*." *Buddy Sys.*, 545 F.2d at 1167 (emphasis added).  Accordingly, "[a] party

3    injured by the issuance of an injunction later determined to be erroneous has no action for

4    damages in the absence of a bond." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United*

5    *Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 770 n.14 (1983) (citations

6    omitted); *see also Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2011 WL

7    5024281, at *9 (N.D. Cal. Oct. 13, 2011) ("no cause of action exists for Wrongful Injunction in

8    the absence of a bond or a court-ordered payment between the parties" (citation omitted)).

9         Real Action filed a Motion requesting that this Court "authorize" the Clerk of Court to

10   accept transfer of the security deposit, i.e., the bond issued by the Indiana Court in the Indiana

11   Action, although as it tacitly acknowledged, this Court has no power to order the Indiana Court to

12   transfer the bond as Real Action requested.  Dkt. No. 158.  There is no indication the Indiana

13   Court attempted to transfer the bond on its own.  Meanwhile, this Court earlier denied without

14   prejudice Real Action's Motion to Accept the Security, finding it premature.  Dkt. No. 148.  In

15   briefing that matter, none of the parties cited any case law wherein one district court sat in

16   judgment over another district court's issuance of a TRO or preliminary injunction, and given the

17   highly unusual circumstances present in this case, the Court deemed it prudent to await further

18   briefing on the matter and the substantive issues raised in this case.  Recently, however, the

19   Indiana Court released the bond, presumably back to ATO.  *See* Dkt. No. 184.  Faced with these

20   circumstances—and regardless of what this Court or the Indiana Court could have done

21   differently—at this point, this Court does not have jurisdiction over Real Action's Wrongful

22   Injunction claims absent the bond.  *See Buddy Sys.*, 545 F.2d at 1168-69 ("Once the security is

23   returned to the plaintiff there can no longer a section 1352 action 'on a bond.'"); *Language Line*

24   *Servs.*, 2011 WL 5024281, at *9 (no wrongful injunction claim without a bond).

25         Real Action is not without a remedy, however.  It has presented a number of other theories

26   for relief, including causes of action for abuse of process and related claims, under which it may

27   recover its damages, if so warranted, regardless of the bond.  *See Buddy Sys.*, 545 F.2d at 1168;

28   *Gametech Int'l, Inc. v. Trend Gaming Sys., LLC*, 2005 WL 1473982, at *2 (D. Ariz. June 21,

United States District Court
Northern District of California

2005) ("absent a different legal theory *like malicious prosecution or unjust enrichment*, a wrongfully enjoined party has no recourse for damages in the absence of a bond." (emphasis added)).  Accordingly, the Court **DISMISSES WITH PREJUDICE** Real Action's First and Second Counterclaims for Wrongful Injunction.

        2.      <u>Wrongful Seizure Claim</u>

        Counter-Defendants also move to dismiss Real Action's Wrongful Seizure claim, first arguing only the Indiana Court may assess whether the seizure was wrongful as it was the court that permitted the seizure.  Real Action brings its Wrongful Seizure claims under 15 U.S.C. § 1116(d)(11), which provides: "A person who suffers damage by reason of a wrongful seizure . . . has a cause of action against the applicant . . . to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee."  There is nothing in this statute suggesting that only the court which issued the seizure order may review its effects.[9]  Instead, the statute identifies that the injured party has an independent "cause of action" to recover its damages.  Accordingly, the Court may hear such a claim.

        Counter-Defendants additionally challenge Real Action's seizure claim on other grounds, none of which convince the Court that this claim should be dismissed.  First, they assert Real Action "fails to sufficiently state that its products were not counterfeit."  MTD Br. at 7.  But as Real Action points out, it does in fact allege "the matter seized was not counterfeit[,]" MTD Opp'n at 5, Dkt. No. 169 (citing FACC ¶ 68), and supports this with the allegation that, in the Indiana Action, none of ATO's witnesses were able to identify a single instance where Real Action had sold a projectile bearing the PepperBall mark.  FACC ¶ 33.  Second, while Counter-Defendants insist 15 U.S.C. § 1116(d)(11) requires bad faith as an element, the plain language of the statute

---

[9] The cases cited by Counter-Defendants in support of their argument that only the issuing court may hear a wrongful seizure claim are not on point.  *See* MTD Br. at 6 (citing *Clorox Co. v. Inland Empire Wholesale Grocers, Inc.*, 874 F. Supp. 1065 (C.D. Cal. 1994); *Gen. Elec. Co. v. Speicher*, 681 F. Supp. 1337, 1339 (N.D. Ind. 1988)).  Neither case addresses whether a non-issuing court may hear a wrongful seizure claim; they simply state the inoffensive, obvious proposition that the issuing court may hear such claims.

United States District Court
Northern District of California

indicates bad faith is merely a requirement for punitive damages to be recovered. *See* 15 U.S.C. § 1116(d)(11) ("A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, *and punitive damages in instances where the seizure was sought in bad faith*, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee." (emphasis added)).  None of these arguments demonstrate Real Action's Wrongful Seizure claim should be dismissed.  Accordingly, the Court **DENIES** Counter-Defendants' Motion to Dismiss Real Action's Wrongful Seizure claim at this time.[10]

**B.     Malicious Prosecution and Abuse of Process**

Real Action brings Abuse of Process and Malicious Prosecution counterclaims pursuant to Indiana law.  FACC ¶¶ 72-82.  Counter-Defendants contend the Court should strike these claims because they both challenge activity Counter-Defendants assert is protected—namely, their right to petition and seek relief in the Indiana Action.  MTS Br. at 9.  They urge the Court to find Real Action has not shown a probability of prevailing on these claims.  *Id.* at 9, 15-16.

1.     Malicious Prosecution

First, Counter-Defendants have met their burden of showing Real Action's malicious prosecution claim challenges protected activities.  *Soukup*, 39 Cal. 4th at 291 (defendants fulfilled threshold requirement as "[b]y definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit. . . . [and t]he filing of lawsuits is an aspect of the First Amendment right of petition." (quotations omitted)).

Second is the issue of whether Real Action has shown a probability it will prevail on this

---

[10] Counter-Defendants assert the Court should apply California's anti-SLAPP law to Real Action's Wrongful Seizure claim because "at [its] essence" this claim is "for conversion under state law simply re-labeled to have the appearance of federal claims." MTS Reply at 2.  This argument is meritless.  Real Action has a cause of action under 15 U.S.C. § 1116(d)(11), and the Court will not twist and contort this claim into something it is not.  Moreover, Real Action separately alleged state law conversion claims, which demonstrate its decision to seek relief under a variety of different claims, one of which is a federal claim.  As California's anti-SLAPP law does not apply to federal claims, *Hilton*, 599 F.3d at 901, the Court **DENIES** Counter-Defendants' Motion to Strike to Real Action's Wrongful Seizure claim.

United States District Court
Northern District of California

1    claim.  Under Indiana Law, to prevail on a malicious prosecution claim, the plaintiff must

2    establish that "(1) the defendant . . . instituted or caused to be instituted an action against the

3    plaintiff . . . ; (2) the defendant acted with malice in doing so; (3) the defendant had no probable

4    cause to institute the action; and (4) the original action was terminated in the plaintiff's favor."

5    *Bah v. Mac's Convenience Stores, LLC*, 2015 WL 3965781, at *6 (Ind. Ct. App. June 30, 2015)

6    (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)); *see also* FACC ¶ 78

7    (citing *City of New Haven*, 748 N.E.2d at 378 for the proposition that "Under Indiana law, the

8    elements of malicious prosecution are: acting with malice and without probable cause, instituted or

9    caused to be instituted a prosecution that terminated in the plaintiff's favor.").

10           The Court agrees with Counter-Defendants that Real Action has not shown a probability of

11   prevailing on the merits for its Malicious Prosecution claims because it has not shown that

12   Counter-Defendants did not have probable cause to file suit against it.  Two courts now—

13   including this one—found that Counter-Defendants were likely to succeed with claims against

14   Real Action for its alleged misuse of the Pepperball name.  *See* Dkt. No. 85 (Order re: Preliminary

15   Injunction); Dkt. No. 164, Exs. C & F (TRO and Preliminary Injunction Order in the Indiana

16   Action).[11]  Given these findings, the Court cannot find now that Real Action has a probability of

17   prevailing in showing that Counter-Defendants did not have probable cause to initiate the Indiana

18   Action.  Even if Real Action is correct that some of the Counter-Defendants' claims prove to be

19   fruitless, the inquiry is whether Counter-Defendants had probable cause to initiate legal action

20   against Real Action.  *See City of New Haven*, 748 N.E.2d at 378.  The Indiana Court's grant of a

21   TRO and preliminary injunction against Real Action—which were largely re-instated by this

22   Court's preliminary injunction—confirms the presence of probable cause to institute legal action.

23   *See Ace Bail Bonds v. Gov't Payment Serv., Inc.*, 892 N.E.2d 702, 705 (Ind. Ct. App. 2008) ("The

24   rule in Indiana is that a decision by a competent tribunal in favor of the person(s) who initiated the

25   civil action complained of is conclusive evidence of probable cause, even though that decision was

26   subsequently reversed on appeal."  (quoting *Chapman v. Grimm & Grimm, P.C.*, 638 N.E.2d 462,

27

28   _____

[11] The Court grants judicial notice to these documents as matters of public record.  *See* Fed. R.
Evid. 201(c); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

*United States District Court*
*Northern District of California*

464 (Ind. Ct. App. 1994)).

In sum, the Court **GRANTS** Counter-Defendant's Motion to Strike Real Action's Malicious Prosecution **WITHOUT LEAVE TO AMEND**.

2.    Abuse of Process

As to the first prong of the anti-SLAPP requirements, the Court finds Real Action's Abuse of Process Claim arises from protected activities. *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1368 (2009) (an abuse of process claim "by definition arise[s] from the protected activity" of the filing of a complaint).

The Court thus turns to the second prong: whether Real Action has shown a probability of prevailing on this claim. The elements for an abuse of process claim under Indiana law are (1) an ulterior purpose or motive, and (2) a willful act in the use of process not proper in the regular conduct of a proceeding. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 250 (Ind. Ct. App. 2013). For an abuse of process claim, "[i]f a party's 'acts are procedurally and substantively proper under the circumstances' then his intent is irrelevant." *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005) (quotation omitted). "A party may not be held liable for abuse of process if the 'legal process has been used to accomplish an outcome which the process was designed to accomplish.'" *Id.* (quotation omitted). "Put another way, 'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion.'" *Reichart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App. 1997) (quotation omitted).

"Thus, the starting point of inquiry is not motive or intent, but whether the counter-defendant used an improper *process* to accomplish a goal other than that which the law was designed to accomplish." *Bell v. Taylor*, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014) (citations omitted; emphasis added). "'Process' means the procedures incident to litigation"—in other words, the "use of judicial machinery" by which a litigant undertakes action in pursuing a legal claim. *Brooks v. Harding*, 2001 WL 548098, at *7 (S.D. Ind. March 30, 2001) (citing *Reichhart*, 674 N.E.2d at 31). "A party is not liable if the legal process has been used to accomplish an outcome that it was designed to accomplish." *Konecranes v. Davis*, 2013 WL 5701046, at *5 (S.D. Ind. Oct. 18, 2013) (citations omitted).

The Court finds Real Action has established there is a probability it will prevail on the abuse of process claim.  "A complaint that is filed for a purpose other than resolving a dispute or seeking damages . . . is substantively improper and may give rise to an abuse of process claim." *Estate of Mayer*, 2013 WL 5516465 at *14 ("There must be evidence that an attorney filed a claim for a purpose other than aiding his or her client in adjudicating his or her claim.").  Real Action alleges "ATO, Gibson, Tiberius, Blumenthal, and Piell had an ulterior motive for seeking to oppress Real Action's freedom to operate in the marketplace[,]" namely, to "wrongfully perpetuat[e] their de facto monopoly position in the irritant projectile market."  FACC ¶¶ 74-75. Elsewhere, Real Action alleges "ATO, Gibson, Tiberius, Tiberius Arms, Blumenthal and Piell sought to maintain ATO's unlawful monopoly on the irritant projectile market through improper means, to seek to drive a competitor out of business by abusing the legal process, and to negotiate leveraged settlements with Apon and Sun LLC that would improperly advantage ATO in the market—and attempt to negotiate a similar agreement with Real Action to the same ends." *Id.* ¶¶ 95.  Real Action contends ATO "bragged" about its monopoly in court filings and used it "as a justification to government agencies . . . as to why purchases of irritant projectiles had to be made exclusively from ATO and from no other supplier[.]"  *Id.* ¶ 40 (citing ATO Case, Dkt. No. 1-6 ("Limited Source Justification for Federal Supply Schedule")); *see also* Dkt. No. 131-13 (Tr. of G. Gibson's Test. on Sept. 20, 2012 at 157:15-17 ("Q: So who is your biggest competitor for pepper-powder projectiles?  A: At this point in time, I don't think we have a competitor.")).

Real Action has thus provided allegations that, if credited, establish at least minimal merit and a probability of prevailing on an abuse of process claim.  *See West v. West*, 694 F.3d 904, 906 (7th Cir. 2012) ("A suit can be wrongful even if it is not groundless, if the aim is something other than a judgment, such as bankrupting the defendant or destroying his reputation or distracting him from his other pursuits or simply immiserating him.  Such a suit is an abuse of process." (citations omitted)).  Accordingly, the Court **DENIES** Counter-Defendants' Motion to Strike this claim.

**C.      Intentional and/or Negligent Inference Claims**

Real Action asserts claims against several Counter-Defendants for (1) intentional inference with contractual relations under Indiana and California law (FACC ¶¶ 83-97); and (2) intentional

or negligent interference with prospective economic advantage under Indiana and California law (*id.* ¶¶ 98-106).  Counter-Defendants challenge these claims under California's anti-SLAPP law, asserting they arise from protected activities.  Specifically, they note Real Action alleges they committed wrongdoing by (a) "purposefully fil[ing] the Indiana Action and motions for a TRO and preliminary injunction with the purpose of undermining and upsetting the agreement" between Real Action and Sun LLC; and (b) "purposefully fil[ing] the Indiana Action and [seeking] unlawful injunctions with the Indiana federal court with the purpose of undermining and upsetting" Real Action's "relationships with customers that purchased irritant projectiles and training rounds."  MTS Br. at 10 (citing FACC ¶¶ 86, 101).  Given these allegations, the Court agrees Real Action's interference claims arise out of protected activities.

The issue then is whether Real Action has established a probability of prevailing on its interference claims.[12]

### 1.   Interference with Contractual Relations

Under Indiana law, "proof of five elements is necessary to recover for tortious interference with a contract: (i) existence of a valid and enforceable contract; (ii) defendant's knowledge of the existence of the contract; (iii) defendant's intentional inducement of breach of the contract; (iv) the absence of justification; and (v) damages resulting from defendant's wrongful inducement of the breach."  *DIRECTV, Inc. v. Ferguson*, 328 F. Supp. 2d 904, 913-14 (N.D. Ind. 2004) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994)).  Lack of justification is established "only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another."  *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005) (citations

---

[12] The parties did not discuss whether Real Action properly brings claims under both Indiana and California law, or which state's laws properly apply to these claims.  As this issue was not raised by the parties, the Court considers both states' laws for the time being.  However, "[w]hen this matter is briefed again, the parties should explain either which law they think applies to which claims or why they cannot do so because of lack of discovery."  *Cover v. Windsor Surry Co.*, 2015 WL 4396215, at *1 n.1 (N.D. Cal. July 17, 2015) (analyzing claims under three states' laws where the parties had yet to determine which state's laws applied to the claims, but directing the parties to address the matter in future briefing).

United States District Court
Northern District of California

1   omitted).  "The existence of a legitimate reason for the defendant's actions provides the necessary

2   justification to avoid liability."  *Id.* at 157 (citation omitted).

3          Under California law, "to state the cause of action for intentional interference with

4   contractual relations" a plaintiff must plead "(1) a valid contract between plaintiff and a third

5   party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

6   induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

7   contractual relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,

8   50 Cal. 3d 1118, 1126 (1990).  "Because interference with an existing contract receives greater

9   solicitude than does interference with prospective economic advantage, . . . it is not necessary that

10  the defendant's conduct be wrongful apart from the interference with the contract itself[,]" nor

11  "does [it] require that the actor's primary purpose be disruption of the contract."  *Quelimane Co. v.*

12  *Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55-56 (1998), *as modified* (Sept. 23, 1998) (citations

13  omitted).  "[I]ntentionally interfering with an existing contract is 'a wrong in and of itself[.]'"

14  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003) (quoting *Quelimane*,

15  19 Cal. 4th at 56).  Thus, a plaintiff need only show "defendant's knowledge that the interference

16  was certain or substantially certain to occur as a result of his or her action."  *Reeves v. Hanlon*, 33

17  Cal. 4th 1140, 1148 (2004) (citing *Quelimane*, 19 Cal. 4th at 56).

18         The Court finds Real Action has shown a probability of prevailing on its interference with

19  contractual relations claim.  Specifically, Real Action alleges it had a contract with Sun LLC to

20  procure projectiles from Apon and includes as attachments to the FACC numerous documents that

21  purport to show the Counter-Defendants named in this claim knew about this contract and acted to

22  facilitate a settlement agreement between ATO and Sun LLC that forbade Sun and Sun LLC from

23  honoring its pre-existing agreement with Real Action.  *See* FACC ¶¶ 85-87, 89-94; *see also*

24  Compl. ¶ 16 (acknowledging "RAP4 and Tran accepted Sun's proposal and entered into an

25  agreement to buy projectiles sold by Sun from APON").  Real Action alleges Sun and Sun LLC

26  did in fact settle in the Indiana Action, and provides evidence of that agreement, which caused Sun

27  LLC to breach its agreement with Real Action and in turn "caused Real Action to lose significant

28  profits from sales of irritant projectiles and related products, and has damaged Real Action's good

United States District Court
Northern District of California

name and reputation in this business."  FACC ¶¶ 94-97.  The FACC also alleges Counter-Defendants named in this claim interfered with Real Action's contract with Sun LLC "to maintain ATO's unlawful monopoly on the irritant projectile market through improper means, [and] . . . to drive a competitor out of business."  *Id.* ¶ 95.

Counter-Defendants assert a number of unpersuasive arguments to undermine these allegations and the documents submitted, including that Real Action "cannot prove that ATO, Gibson, Tiberius, Piell, or Blumenthal acted intentionally to induce a breach or disruption of [it]s contractual relationships[,]" noting ATO was the only plaintiff in the Indiana Action.  MTS Br. at 17.  Regardless of who was the plaintiff in the Indiana Action, the issue is whether the named Counter-Defendants in this claim intentionally interfered with Real Action's contractual relationship with Sun LLC (and potentially Apon).  Real Action's allegations and supporting evidence show that the Counter-Defendants named in this claim took actions resulting in the interference of the contract with Sun LLC (and potentially Apon), regardless of whether their "intent was proper[.]"  MTS Br. at 17; *Quelimane*, 19 Cal. 4th at 55 ("[I]t is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (citation omitted)); *but see DIRECTV*, 328 F. Supp. 2d at 914 (considering "the absence of justification" as an element of an contractual relations interference claim).[13]  Given these allegations and evidence, Real Action's interference with contractual relations claims is "both legally sufficient and supported by a sufficient prima facie showing of facts" to sustain a favorable judgment.[14]

---

[13] Even as to Indiana's "absence of justification" requirement, the Court finds Real Action has established a probability of prevailing.  Lack of justification is established "only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another."  *Bilimoria Computer Sys.*, 829 N.E.2d at 156-57.  While Counter-Defendants assert they acted to protect their trademark and business, Real Action has alleged facts and put forward documentation indicating they were "motivated by a desire to maintain [ATO's] monopoly on the market for irritant projectiles."  FACC ¶ 40.  This suggests the named Counter-Defendants were not justified in their actions of interfering with Real Action's contract with Sun LLC.  This is not a conclusive finding, merely a determination that if Real Action's evidence is credited, it has put forward a sufficient prima facie showing of facts.  *See Mindys Cosmetics*, 611 F.3d at 599.

[14] Counter-Defendants have not raised California's Litigation Privilege, Cal. Civ. Code § 47(b), in discussing whether Real Action has demonstrated probability of prevailing on this claim.  "Case law interprets Section 47(b) as applying to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the

United States District Court
Northern District of California

2.   <u>Interference with Prospective Economic Advantage</u>

"Under Indiana law, the elements of a cause of action for tortious interference with a prospective economic advantage include: (1) the existence of a business relationship, (2) the defendant's knowledge of the existence of the relationship, (3) the defendant's intentional interference in the relationship, (4) the absence of any justification, and (5) damages resulting from the defendant's interference." *Butts v. Oce-USA, Inc.*, 9 F. Supp. 2d 1007, 1012 (S.D. Ind. 1998) (citation omitted). In addition, "it is critical that the defendant acted illegally in achieving his end." *Id.* (quoting *Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553, 556-57 (S.D. Ind. 1988)). "Therefore, in considering whether the plaintiff has met its burden in this case, the court must consider whether any conduct which is found to interfere with a prospective business advantage is sufficiently 'wrongful' to satisfy the illegality requirement." *Economation*, 694 F. Supp. at 557.

Under California law, the elements of a claim for intentional interference with prospective advantage are: (1) "an economic relationship" with a third party "which offered the probability of future economic benefit" to plaintiff; (2) "defendants' knowledge of this relationship; (3) defendants' intentional acts designed to disrupt that relationship; (4) actual disruption of the relationship; and (5) economic harm . . . proximately caused by defendants' acts." *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544 (2007) (citation omitted). In addition, "[t]o establish a claim for interference with prospective economic advantage, . . . a plaintiff must plead that the defendant engaged in an independently wrongful act." *Korea Supply*, 29 Cal. 4th at 1158; *see also Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995) ("[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only

---

objects of the litigation; and (4) that have some connection or logical relation to the action.'" *G & C Auto Body Inc v. Geico Gen. Ins. Co.*, 2008 WL 687371, at *7 (N.D. Cal. Mar. 11, 2008) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)). Counter-Defendants may have intentionally chosen not to raise the privilege, perhaps because "[a]s a general rule, the privilege 'applies only to communicative acts and does not privilege tortious courses of conduct.'" *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1248-49 (2007) (quotations omitted). Accordingly, the Court will not analyze this claim under that privilege at this time.

27

knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.").  "An act is not independently wrongful merely because defendant acted with an improper motive," rather, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1158-59.  Accordingly, courts have defined "wrongful conduct" as "(1) conduct that is independently tortious or a restraint of trade; (2) conduct violating a statute, regulation, a recognized rule of common law, or an established standard of a trade or profession; or (3) conduct that is illegal, unfair, or immoral according to common understandings of society." *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (citations omitted).

As discussed above in relation to Real Action's claims for interference with contractual relations, the Court finds Real Action has alleged facts and provided supporting evidence to make out a prima facie case that the Counter-Defendants named in this claim intentionally interfered with a prospective economic advantage by interfering with the contract between Real Action and Sun LLC.  *See supra*, Discussion, part C.1.  Furthermore, Real Action has alleged facts and provided supporting evidence, which if ultimately credited, could demonstrate the named Counter-Defendants interfered with the contract between Real Action and Sun LLC in order to restrain trade and maintain ATO's monopoly, which would be considered wrongful conduct.  *See Visto*, 360 F. Supp. 2d at 1067; *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1259 (2002) (including unfair competition as an independently wrongful act).  Accordingly, the Court finds Real Action has shown a probability of prevailing on its intentional interference with prospective economic advantage claim.[15]

However, Real Action has also alleged a *negligent* interference with prospective economic advantage claim under California law[16] concerning the interruptions in its relationships with

---

[15] Again, Counter-Defendants did not raise California's Litigation Privilege, Cal. Civ. Code § 47(b), in challenging this claim.

[16] As discussed above, Indiana law recognizes a cause of action for "tortious interference with prospective economic advantage" but, unlike California, does not appear to explicitly differentiate between negligent and intentional interference causes of action.

customers as well as Apon and Sun LLC.  In California, the tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates: (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.  *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 786 (1997); *see also Aghmane v. Bank of Am., N.A.*, 2014 WL 6893866, at *21 (N.D. Cal. Dec. 5, 2014) ("A claim for negligent interference with prospective economic advantage requires a plaintiff to prove the same elements, except instead of proving intentional acts on the defendant's part, the plaintiff must prove that the defendant was negligent." (citing *N. Am. Chem*, 59 Cal. App. 4th at 786)).

Counter-Defendants argue Real Action cannot establish "ATO, Gibson, Tiberius, Piell or Blumenthal negligently interfered with RAP4's prospective economic advantage because RAP4 cannot prove, and has not alleged, that ATO, Gibson, Tiberius, Piell or Blumenthal owed RAP4 a duty of care."  MTS Br. at 19 (citing *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 957 (N.D. Cal. 2003) ("To state a claim for negligent interference with economic advantage, plaintiff must allege defendant owed plaintiff a duty of care in addition to the elements required to state a cause of action for intentional interference with economic advantage." (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803-04 (1979)))).  But as explained in *J'Aire*, "[t]his court has repeatedly eschewed overly rigid common law formulations of duty in favor of allowing compensation for foreseeable injuries caused by a defendant's want of ordinary care."  24 Cal. 3d at 805 (citations omitted).  Thus, "[w]hile the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as a result of

their conduct. . . . Foreseeability of the risk is a primary consideration in establishing the element of duty." *Id.* at 806 (quotation and internal marks omitted).  Real Action has shown it was foreseeable that if the named Counter-Defendants did not act with due care, their actions would interfere with the relationship between Real Action and Sun LLC, Apon, and its customers, and cause Real Action to lose the future economic benefit or advantage of these relationships. Accordingly, the Court finds Real Action has established a probability of prevailing on this claim.

> 3.   Summary of Interference Claims

In light of the foregoing analysis, the Court **DENIES** Counter-Defendants' Motion to Strike Real Action's Interference Claims.

**D.    Tortious and Criminal Conversion Claims**

Real Action also brings claims for tortious and criminal conversion under both Indiana and California law, alleging ATO, Gibson, and Blumenthal wrongfully converted RAP4's property by "unlawfully seizing" over 180,000 irritant and training projectiles from Real Action.  FACC ¶¶ 110-11, 115-16.  Under Indiana law, to prove criminal conversion, a plaintiff must demonstrate the defendant "knowingly or intentionally exert[ed] unauthorized control over property of another."  Ind. Code § 35-43-4-3(a).[17]  "Unlike with criminal conversion, mens rea is not an element of tortious conversion."  *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1058 (S.D. Ind. 2011) (citation omitted); *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010) ("Criminal conversion requires the unauthorized control to be either knowing or intentional, but mens rea is not an element of tortious [i.e. civil] conversion.").  Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another."  *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 451 (1997) (internal quotation marks omitted).  The elements of a claim for conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages.  *Prakashpalan v. Engstrom, Lipscomb & Lack*,

---

[17] Counter-Defendants contend "Indiana law on conversion should not apply because the allegedly wrongful act occurred in California where the infringing projectiles were seized."  MTS Br. at 19 n.7.  Real Action did not respond to this argument.

United States District Court
Northern District of California

223 Cal. App. 4th 1105, 1135 (2014) (citation omitted).

Counter-Defendants only sought to strike this claim under California's anti-SLAPP law—not to dismiss under Rule 12(b)(6)—despite their primary argument being that Real Action cannot show "the Indiana Action or any seizure of RAP4's property was wrongful."  MTS Br. at 19. Although the Court is not entirely convinced that Real Action's conversion claims "arise from" from acts in furtherance of the Counter-Defendants' rights of petition or free speech, *Braun*, 52 Cal. App. 4th at 1042-43, the Court nonetheless finds Real Action has failed to state a claim on which relief can be granted, as the Counter-Defendants named in this claim exercised dominion over Real Action's irritant projectiles as a result of the Indiana Court's order authorizing this seizure.  As Counter-Defendants acted pursuant to the Indiana Court's Order, this Court cannot find they acted wrongfully or without authorization in taking the irritant projectiles into their possession.  *See, e.g.*, *Biggins v. Newlee*, 2011 WL 5842849, at *4-5 (Cal. Ct. App. Nov. 22, 2011) (unpublished) (defendant did not wrongfully exercise dominion over plaintiff's property where transfer of funds was made pursuant to court order).

Accordingly, Real Action's conversion claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

**E.      False Designation of Origin**

Counter-Defendants challenge Real Action's False Designation of Origin counterclaim only on Rule 12(b)(6) grounds.  The parties agree that in order to succeed on an infringement/false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove each of the following elements: (1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts.  *See* MTD Br. at 7 and FACC ¶ 119 (both citing *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996)).

United States District Court
Northern District of California

1    Counter-Defendants contend this counterclaim fails because UTS is the registered and true

2    owner of the Pepperball mark, and before that, ATO was the registered and true owner of the

3    Pepperball mark, and "[a] published registration for a trademark with the United States Patent and

4    Trademark Office is prima facie evidence of the existence of a trademark[.]"  MTD Br. at 8

5    (citations omitted).  They assert Real Action's counterclaim "contains no facts that challenge

6    ATO's ownership of the Pepperball Mark or the more recent assignment from ATO to UTS.

7    Therefore, [it] has not pled a claim for false designation of origin of products and services

8    associated with the assets formerly owned by [Pepperball Technologies]."  *Id.*

9    However, Real Action correctly points out its counterclaim contains facts alleging ATO

10   "failed to properly and lawfully acquire" the Pepperball trademark and assets.  MTD Opp'n at 5

11   (citing FACC ¶ 27).  Specifically, Real Action alleges "[n]o written document exists assigning the

12   PepperBall trademark from Pepperball Tech to ATO and no such document has ever been

13   registered with the Trademark office."  FACC ¶ 27.  "Moreover, even ATO does not claim that it

14   either purchased or acquired Pepperball Tech; rather, it only claims that it acquired Pepperball

15   Tech's assets."  *Id.*  Additionally, Real Action alleges "UTS has been masquerading Pepperball

16   Tech by representing itself either as Pepperball Tech or as the successor entity of Pepperball Tech

17   on the website www.pepperball.com . . . .  when in fact, UTS, by its own description, is NOT

18   PepperBall Tech, but is the successor of ATO, a company that both ATO and UTS claim

19   purchased and foreclosed on PepperBall Technologies Inc.'s assets."  *Id.* ¶ 148.  Taking these facts

20   as true at this stage, Real Action alleges plausible facts challenging ATO's ownership of the

21   Pepperball mark and the propriety of UTS's representation of itself as Pepperball Tech in

22   promoting and selling its products.

23   While the Court finds Real Action has stated a claim against ATO and UTS, Counter-

24   Defendants also challenge Real Action's attempts to assert this counterclaim against Tiberius and

25   Gibson.  MTD Br. at 8.  Counter-Defendants assert Real Action "states no facts that sufficiently

26   support the conclusion that Gibson and/or Tiberius acted outside of their capacities as officers or

27   employees when they 'induced' ATO to designate the origin of its products or services" or that

28   Gibson and Tiberius themselves designated the origins of any product or service.  *Id.*  Real Action

United States District Court
Northern District of California

32

did not respond to this argument.

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979) (citations omitted), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). Accordingly, courts have found owners and operators of a corporate entity to be directly liable for trademark and false designation of origin claims. *See, e.g.*, *Symantec Corp. v. Logical Plus, Inc.*, 2009 WL 3416178, at *4 (N.D. Cal. Oct. 20, 2009). They have also, however, rejected claims against officers of infringing corporate entities where plaintiff failed to provide allegations showing how those officers "directed or participated in the infringement directly[.]" *See id.* at *8.

Real Action alleges "[u]pon information and belief, Gibson and Tiberius induced ATO to misrepresent itself as Pepperball Tech and to use Pepperball Tech's government ID of GS07F0067M" and "ATO has misrepresented itself as Pepperball Tech in interstate commerce and sold its products in interstate commerce, including sales to various state and federal governmental agencies. Upon information and belief, Gibson and Tiberius have induced ATO so misrepresent itself." FACC ¶¶ 121-22. It does not explain how it claims to hold this information or belief.

At least one district court in this circuit has adopted the Second Circuit Court of Appeals' test concerning how to interpret the *Twombly* plausibility standard in light of allegations made "upon information and belief." Specifically, that court noted "[t]he Second Circuit has held that the *Twombly* plausibility standard allows factual allegations made 'upon information and belief' where '(1) the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible.'" *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 2015 WL 3488923, at *4 (N.D. Cal. June 2, 2015) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Thus, "allegations made 'upon information and belief' are appropriate where (1) the support for the claims turns on

33

the content of records held by the defendants, or (2) where there is other factual information elsewhere in the complaint upon which the allegations are based." *Id.* (citing *Arista Records*, 604 F.3d at 120). In *Cisco*, for instance, the court found allegations made on "information and belief" about the defendants' participation in a conspiracy plausible as the complaint contained other specific facts supporting those allegations. *Id.* at *3-4; *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Even accepting as true that Gibson and Tiberius own Perfect Circle and Tiberius Arms, respectively, and even though those companies owned ATO, there are no allegations in Real Action's Counterclaim that suggest Gibson and Tiberius actually played any role in directing or participating in ATO's decision to use the Pepperball name. While Real Action alleges these Counter-Defendants induced ATO to make this decision, there are no facts alleged indicating they played an active role in ATO's decision-making process or why they might be expected to play such a role (i.e., if such activity would be expected as a function of their positions within ATO, etc.). At present, Real Action's allegations fail to state a claim for false designation of origin against Gibson and Tiberius.

Accordingly, Counter-Defendants' Motion to Dismiss as to the False Designation of Origin Claim is **DENIED** as to ATO and UTS, but **GRANTED WITH LEAVE TO AMEND** as to Gibson and Tiberius.

## F.    Sherman Act Claim

The Counter-Defendants only challenge Real Action's Sherman Act claim on Rule 12(b)(6) grounds. Specifically, they contend Real Action's allegations state "only bare conclusions" and fail to "sufficiently state facts suggesting that ATO has a monopoly in any defined market." MTD Br. at 8-9. They further assert that, as a matter of law, ATO's prosecution of the Indiana Action cannot be the basis for a Sherman Act claim because there are no plausible allegations that lawsuit was a sham. *Id.* at 9-10. Finally, they contend Rule 9(b)'s heightened pleading standard applies because this claim risks chilling of the exercise of First Amendment rights. *Id.* at 10 (citing *Kottle v. NW Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998)).

United States District Court
Northern District of California

1    Section 2 of the Sherman Act forbids "monopolization" and "attempted monopolization."

2    15 U.S.C. § 2.  A claim brought under Section 2 requires the "possession of monopoly power in

3    the relevant market" and "the willful acquisition or maintenance of that power as distinguished

4    from growth or development as a consequence of a superior product, business acumen, or historic

5    accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570-571 (1966).  However, "[t]he mere

6    possession of monopoly power, and the concomitant charging of monopoly prices, is not only not

7    unlawful; it is an important element of the free-market system."  *Verizon Commc'ns Inc. v. Law*

8    *Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  "To safeguard the incentive to

9    innovate, the possession of monopoly power will not be found unlawful unless it is accompanied

10   by an element of anticompetitive *conduct*."  *Id.* (emphasis in original).

11   Real Action's allegations fall short of pleading a viable Sherman Act violation at this time.

12   To state a claim for unreasonable restraint of trade, monopolization, or attempted monopolization,

13   Real Action must establish that ATO "has market power in a 'relevant market,' meaning a relevant

14   product market and a relevant geographic market."  *Sidibe v. Health*, 51 F. Supp. 3d 870, 883

15   (N.D. Cal. 2014) (citing among others *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456

16   (1993) (monopolization); *Forsyth v. Humana*, 114 F.3d 1467, 1476-77 (9th Cir. 1997)

17   (monopolization and attempted monopolization)).  "The relevant product market identifies the

18   products or services that compete with each other, and the relevant geographic market identifies

19   the area where the competition in the relevant product market takes place."  *Id.* (citing *L.A. Mem'l*

20   *Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1392 (9th Cir. 1984)).

21   Real Action alleges "ATO has been able to perpetuate a *de facto* monopoly in the irritant

22   projectile market[,]" and that ATO itself recognized it had such monopoly power, "bragg[ing]

23   about their long-standing monopoly in numerous court filings in the Indiana Action."  FACC ¶¶

24   43, 130.  Thus, while Real Action identifies the relevant product market—irritant filled

25   projectiles—it has not alleged facts identifying a relevant geographic market.  Without allegations

26   plausibly establishing ATO's monopoly power in a relevant geographic market, Real Action has

27   failed to state a claim on which relief can be granted.  *See Tanaka v. Univ. of S. Cal.*, 252 F.3d

28   1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for

35

United States District Court
Northern District of California

1    dismissing a Sherman Act claim." (citation omitted)).

2        As to Counter-Defendants' argument that Real Action can never state a claim based on

3    their litigation activities in the Indiana Action, the Court disagrees.  Counter-Defendants cite

4    *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993)

5    in support of their argument, but this case does not support an outright bar to Real Action's

6    Sherman Act claim.  Rather, *Professional Real Estate* permits antitrust actions based on litigation

7    activities where there is proof that (1) the suit was "objectively baseless in the sense that no

8    reasonable litigant could realistically expect success on the merits," and (2) there was subjective

9    intent to use the litigation to interfere directly with the business relationships of a competitor.  *Id.*

10   at 60-61.  Thus, to the extent Real Action is able to allege plausible facts supporting the factors in

11   the *Professional Real Estate* test, the Sherman Act claim may be cognizable.[18]  In doing so, Real

12   Action need not necessarily show that the litigation against it was objectively baseless, but rather

13   may allege facts that the litigation against others was objectively baseless.[19]  Moreover, courts

14   have found that activities unrelated to a "petitioning activity" are not limited by *Professional Real*

15   *Estate* or the related *Noerr-Pennington* doctrine.  *See, e.g.*, *Select Portfolio Servicing v. Valentino*,

16   875 F. Supp. 2d 975, 987 (N.D. Cal. 2012).

17       Finally, Counter-Defendants contend Real Action "does not state facts sufficient to suggest

18   that Perfect Circle or Tiberius Arms engaged in any 'concerted action,' and fails to allege a

19

20   [18] Real Action alleges "ATO, Gibson, Tiberius and Blumenthal sued Mr. Sun and Sun LLC
21   alleging bogus and unjustified claims and conducted settlement negotiations with Mr. Sun and Sun
     LLC threatening further abusive legal process with the intent of killing any agreement that Mr.
22   Sun or Sun LLC had with Real Action."  FACC ¶ 86.  Elsewhere it alleges ATO "initiat[ed] and
     maintain[ed] a bogus legal action in Indiana against Real Action and its supplier Sun LLC."  *Id.* ¶
23   131.  But Real Action does not provide allegations as to the legal action against Apon.

24   [19] The Supreme Court also recently considered antitrust liability in the context of "reverse
     payment settlements," in which "a party with no claim for damages . . . walks away with money
25   simply so it will stay away from the patentee's market."  *F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223,
     2233 (2013) (citing *Verizon*, 540 U.S. at 408 ("[C]ollusion" is "the supreme evil of antitrust")).
26   *Actavis* specifically considered a reverse payment settlement between a holder of a drug patent and
     two generic manufacturers, which was alleged to be a "pay for delay" agreement, i.e., the patent
27   holder paid generics to remain out of the market for a period of time.  The Court ultimately found
     that depending on the particular terms of a settlement, a settlement may in fact provide the basis
28   for an antitrust claim.  *Id.* at 2237.  This recent case further demonstrates that settlement
     agreements are not necessarily immune to antitrust attacks.

meeting of the minds between Perfect Circle or Tiberius Arms and any other entity." MTD Br. at 12. In response, Real Action contends it did in fact allege "concerted action" among ATO, Perfect Circle and Tiberius. MTD Opp'n at 9. The Court agrees. Real Action alleges "[w]ith the concerted agreement of Tiberius, and ATO's partner and supplier, Perfect Circle, ATO [] entered into an agreement with Conrad Sun and Sun LLC by which they agreed to refrain from competing in the irritant projectile market and to refrain from buying or selling irritant projectiles from Real Action or to Real Action." FACC ¶ 134. It further alleges "Tiberius and Perfect Circle were parties to that agreement by virtue of the Guaranty . . . . , which Sun LLC required Tiberius and Perfect Circle to provide as a condition to entering into the Agreement." *Id.* Taken as true, these allegations sufficiently allege concerted action.

Nonetheless, given Real Action's failure to sufficiently allege plausible facts supporting the elements of this claim, Real Action's claim under Section 2 of the Sherman Act is **DISMISSED WITH LEAVE TO AMEND**.

## G. California Cartwright Act Claim

Counter-Defendants assert that under California's anti-SLAPP law, the Court should strike Real Action's claim under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq. MTS Br. at 10-11. They contend Real Action's Cartwright Act claim arises out of the filing of the Indiana Action, which constitutes a protected activity. *Id.* Real Action did not address this argument.

Having reviewed the allegations in the FACC, the Court disagrees with Counter-Defendants' argument that Real Action's Cartwright Act claim arises from protected activities. In its FACC, Real Action supports its Cartwright Act claim not on allegations about actions taken in the Indiana Action generally, but on the contracts ATO entered into with Apon, Sun, and Sun LLC to stay out of the less lethal projectile market and to discontinue their relationships with Real Action. FACC ¶¶ 138-40. Counter-Defendants argue these contracts were "entered into in order to settle claims between ATO and Apon and ATO and Sun LLC – not as a concerted agreement between such parties to unreasonably restrain trade." MTS Br. at 20. But as the California Supreme Court has recognized, "[i]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of

petition or free speech."  *City of Cotati*, 29 Cal. 4th at 76 (emphasis in original; citations omitted).

Where a cause of action is not based on an act in furtherance of the defendant's right of petition or

free speech, the anti-SLAPP statute is inapplicable.  *See, e.g.*, *Select Portfolio Servicing*, 875 F.

Supp. at 988 (rejecting application of anti-SLAPP where "[t]he allegedly fraudulent [activities] at

issue . . . were, at most, 'collateral' to the defendants' earlier petitioning activity."); *see also*

*Optional Capital*, 222 Cal. App. 4th at 1400-01.

Unlike Real Action's Interference Claims, which rely at least in part on the filing of the

Indiana Action as a basis for those claims (*see, e.g.*, FACC ¶¶ 86, 101), Real Action's Cartwright

Act claim is only based on the agreements between ATO and Sun, Sun LLC, and Apon.  These

agreements settled the claims in the Indiana Action, but Real Action alleges the agreements also

went further, establishing an agreement to restrain trade in the process.  These agreements may be

"collateral" to protected activities, but the Court does not find this claim is *based on* protected

activities.  *See also In re Episcopal Church Cases*, 45 Cal. 4th at 477 (the "fact that protected

activity may lurk in the background—and may explain why the rift between the parties arose in

the first place—does not transform [such a] dispute into a SLAPP suit.").  Accordingly, Counter-

Defendants' Motion to Strike is **DENIED**.

## H.    Unfair Competition and False Advertising

Counter-Defendants move to strike Real Action's counterclaim for Unfair Competition and

False Advertising under California Business and Professions Code sections 17200 and 17500,

noting its allegations focus on statements and actions taken by Counter-Defendants in connection

with the Indiana Action.  MTS Br. at 11 (citing FACC ¶¶ 143-145 (ATO and Perfect Circle

"wrongfully seiz[ed] [RAP4's] property, and prevent[ed] [RAP4] from competing with ATO and

Perfect Circle in the marketplace," "[i]n the context of the Indiana Action, ATO made false

statements in furtherance of acquiring injunctions that stopped [RAP4] from competing with ATO

in the market" and using the word "Pepperball," and "entered into agreements with APON and

Sun LLC to exclude [RAP4] and its suppliers from the market.")).

Real Action argues "the California Anti-SLAPP statute provides for an exemption

applicable here." MTS Opp'n at 8 (citing Cal. Civ. Proc. Code § 425.17).[20]  It notes "Section 425.16 [i.e., the Anti-SLAPP statute] does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . if both of the following conditions exist: (1) The statement or conduct consists of representations of fact about that person's . . . goods, or services" and "(2) [t]he intended audience is an actual or potential buyer or customer . . . ." *Id.* (quoting Cal. Civ. Proc. Code § 425.17(c)).  Real Action cites California court cases that found claims under Business and Professions Code sections 17200 and 17500 for "false advertising for and misbranding" of a product are exempt from the Anti-SLAPP motion statute, and thus argues the Court should apply such an exemption here.  *Id.* at 9 (citing *Brenton v. Metabolife Int'l, Inc.*, 116 Cal. App. 4th 679, 683, 688 (2004) and *Physicians Comm. For Responsible Med. v. Tyson Foods, Inc.*, 119 Cal. App. 4th 120, 128 (2004)).

In their Reply, Counter-Defendants misstate Real Action's position, arguing Real Action has "taken the unsupported position that Section 425.17 categorically excludes all claims brought under California Business and Professions Code sections 17200 and 17500," MTS Reply at 5, while seemingly failing to acknowledge that Real Action's Opposition focuses only on section 425.17*(c)*.  Counter-Defendants then cite California Supreme Court precedent concerning section 425.17*(b)* to argue that Real Action's Opposition is fruitless.[21]  Furthermore, in Counter-Defendants' discussion of section 425.17(c) in specific, they edit this section and isolate one portion to argue Real Action "may only invoke the protections of section 425.17(c) if the statement's 'intended audience is an actual or potential buyer or customer . . . or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation.'"  MTS Reply at 6 (citing Cal. Civ. Proc. Code § 425.17(c)(2)).  But section

---

[20] "Under the two-pronged test of section 425.16, whether a section 425.17 exemption applies is a first-prong determination." *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 308 (2014) (citation omitted), *reh'g denied* (Aug. 20, 2014), *review denied* (Nov. 12, 2014).

[21] Specifically, Counter-Defendants cite *Club Members For An Honest Election v. Sierra Club*, a California Supreme Court case stating, "[i]f any part of the complaint seeks relief to directly benefit the plaintiff, by securing relief greater than or different from that sought on behalf of the general public, the section 425.17(b) exception does not apply."  45 Cal. 4th 309, 312 (2008). That case did not address section 425.17(c), however.

United States District Court
Northern District of California

1    425.17(c)(2) states in full:

2           The intended audience is an actual or potential buyer or customer, *or
            a person likely to repeat the statement to, or otherwise influence, an*
3           *actual or potential buyer or customer,* or the statement or conduct
            arose out of or within the context of a regulatory approval process,
4           proceeding, or investigation, except where the statement or conduct
            was made by a telephone corporation in the course of a proceeding
5           before the California Public Utilities Commission and is the subject
            of a lawsuit brought by a competitor, notwithstanding that the
6           conduct or statement concerns an important public issue.

7    Cal. Civ. Proc. Code § 425.17(c)(2) (emphasis added).  The full text shows Real Action's

8    counterclaims may be exempted under section 425.17(c) and are not as limited as

9    Counter-Defendants claim.

10          Having reviewed Real Action's allegations for this counterclaim, the Court finds the

11   claims satisfy both prongs of section 425.17(c).  As to the first prong, i.e, section 425.17(c)(1),[22]

12   Real Action alleges UTS has been masquerading as "PepperBall Tech by representing itself either

13   as PepperBall Tech or as the successor entity of PepperBall Tech" and by "promoting its own

14   products as those of Pepperball Tech when, in fact, they are not." FACC ¶¶ 147-48.  It further

15   alleges ATO "made false public statements in favor of its products and against Real Action's

16   products." *Id.* ¶ 147.  As to the second prong, i.e., section 425.17(c)(2), the audience in receipt of

17   such statements includes potential buyers (*id.*) and visitors to the www.pepperball.com website

18   and the ATO/UTS websites (*id.* ¶¶ 148-49).  Even statements made in court may "influence[] an

19   actual or potential buyer or customer."  *See* Cal. Civ. Proc. Code. § 425.17(c)(2).  Accordingly, the

20   Court finds section 425.17(c) bars Counter-Defendants' Motion to Strike under California's anti-

21   SLAPP law.  Accordingly, it is **DENIED**.

22   **I.      Declaratory Judgment**

23          Real Action asserts two declaratory judgment claims: (1) declaratory judgment of no

24   violation of the Lanham Act nor of common law trademark nor trade dress; and (2) declaratory

25   _____

26   [22] Section 425.17(c)(1) provides: "The statement or conduct consists of representations of fact
     about that person's or a business competitor's business operations, goods, or services, that is made
27   for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial
     transactions in, the person's goods or services, or the statement or conduct was made in the course
28   of delivering the person's goods or services."  Cal. Civ. Proc. Code § 425.17(c)(1).

United States District Court
Northern District of California

judgment of no trade secret misappropriation.  FACC ¶¶ 150-60.

      1.     <u>Motion to Dismiss</u>

      First, Counter-Defendants argue Real Action's Declaratory Judgment claims should be dismissed for the same reasons as its False Designation of Origin claims, namely because they believe Real Action has not alleged facts challenging ATO and UTS's ownership of the Pepperball mark, and Real Action cannot show that it was entitled to use the mark.  MTD Br. at 12.  But as described above, Real Action has alleged facts challenging ownership of the mark.  Furthermore, Real Action "contends that it has done nothing wrong and that ATO/UTS have no trademark or trade secret rights that Real Action has violated."  MTD Opp'n at 9.  If Real Action can prove the allegations in its FACC, it may be entitled to Declaratory Judgment.  Accordingly, the Court **DENIES** Counter-Defendants' Motion to Dismiss these claims at this time.

      2.     <u>Motion to Strike Under California's Anti-SLAPP Law</u>

      Second, Counter-Defendants challenge Real Action's Declaratory Judgment counterclaims under California's anti-SLAPP law.  MTS Br. at 11.  It is unclear, however, how Counter-Defendants contend these Declaratory Judgment claims threaten their protected activity.  Real Action's Declaratory Judgment counterclaims seek declarations that Real Action did not infringe on Counter-Defendants' trademarks or misappropriate their trade secrets.  FACC ¶¶ 151-60.  Even if some of the allegations in the FACC refer to actions Counter-Defendants took in the Indiana Action, those allegations are largely superfluous to Real Action's primary allegations, which make it clear Real Action's Declaratory Judgment claims focus on its belief it did not violate Counter-Defendants' trademarks or misappropriate their trade secrets.  These claims do not risk chilling Counter-Defendants' valid exercise of their constitutional rights.  Accordingly, the Court **DENIES** Counter-Defendants' Motion to Strike these claims.

      3.     <u>Motion to Strike as Redundant</u>

      Third, Counter-Defendants assert Plaintiff's declaratory judgment claims should be stricken under Rule 12(f) as redundant.  *See* MTD Br. at 13 (citing Fed. R. Civ. P. 12(f) (the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous.")).  Real Action's Declaratory Judgment counterclaims

seek declarations it did not violate the Lanham Act by infringing on ATO/UTS's trademark and it did not misappropriate trade secrets.  Counter-Defendants contend these claims are "entirely redundant" with Real Action's affirmative defenses.  Real Action's Opposition did not address Counter-Defendants' Rule 12(f) arguments.

The Court does not find it appropriate to strike Real Action's Declaratory Judgment counterclaims under Rule 12(f) at this time.  First, while Counter-Defendants are correct that Real Action's Answer briefly states Real Action requests findings and declarations from the Court that Real Action has not infringed on trademarks held by UTS, the Answer does not specifically refer to Real Action's request for declaratory judgment that it did not misappropriate trade secrets.  *See* Answer at 35, Dkt. No. 52.  Second, courts have recognized it is not necessarily error for a defendant to plead similar affirmative defenses and counterclaims, and in some cases, doing so may assist a party is preserving its arguments.  *See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009) *aff'd*, 563 U.S. 776 (2011) (citing *Dubied Mach. Co. v. Vt. Knitting Co.*, 739 F. Supp. 867, 871 n.3 (S.D.N.Y. 1990) ("It is permissible to label a response to a plaintiff's cause of action as both an affirmative defense and as a counterclaim.")).

Finally, "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.) (citations omitted); *Park v. Welch Foods, Inc.*, 2014 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014) ( "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." (footnote and quotation omitted)).  Such doubts considering the import of allegations to be stricken are particularly present in trademark infringement and patent cases.  *See Stickrath v. Globalstar, Inc.*, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008).  While it is possible Real Action's Declaratory Judgment counterclaims could be adequately adjudicated through its affirmative defenses, which would certainly help to streamline this already loaded case, the Court cannot say Real Action's counterclaims will necessarily be resolved by the adjudication of the main action.  Accordingly, the Court declines to strike the Declaratory Judgment counterclaims

United States District Court
Northern District of California

42

1     under Rule 12(f) at this time and **DENIES** Counter-Defendants' Motion to Strike.

2     **J.**     **Unjust Enrichment**

3         Counter-Defendants argue Real Action's Unjust Enrichment claim should be stricken

4     under California's anti-SLAPP law.  They note Real Action alleges "ATO and Perfect Circle

5     conferred 'a measurable benefit' by 'obtaining the TRO and preliminary injunction in the Indiana

6     Action,' which allowed them to 'make profits that they would not otherwise have made.'"  MTS

7     Br. at 16 (quoting FACC ¶¶ 163, 164).  Given these allegations, Counter-Defendants contend Real

8     Action's Unjust Enrichment claim arises from protected activities stemming from the TRO and

9     Preliminary Injunction Order entered in the Indiana Action.

10         The Court agrees that Real Action's unjust enrichment claims arise from allegations

11     involving protected activities and thus turns to the second prong of the anti-SLAPP analysis.

12     A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to

13     permit a recovery . . . where the circumstances are such that under the law of natural and

14     immutable justice there should be a recovery . . ."  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind.

15     1991) (citation omitted).  "A person who has been unjustly enriched at the expense of another is

16     required to make restitution to the other."  Restatement of Restitution § 1 (1937).  To prevail on a

17     claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred

18     on the defendant under such circumstances that the defendant's retention of the benefit without

19     payment would be unjust.  *Bayh*, 573 N.E.2d at 408.

20         Counter-Defendants argue "RAP4's claim for unjust enrichment fails because RAP4

21     cannot prove that any 'benefit' ATO and Perfect Circle received as a result of the TRO and

22     preliminary injunction, including a settlement with Apon, was unjust."  MTS Br. at 23.  They

23     contend there was nothing about the Indiana Court's decisions that were unjust and there was

24     nothing unjust "in ATO seeking to have APON refrain from using confidential and proprietary

25     information it received from its relationship with PTI to compete with the new owner of that

26     confidential and proprietary information – ATO."  *Id.*  While Counter-Defendants may be correct

27     that there was nothing unjust about the activities they reference, Real Action's FACC alleges more

28     than just those activities.  Specifically, Real Action alleges ATO's agreements with Apon, Sun,

United States District Court
Northern District of California

1    and Sun LLC caused them to stop working with Real Action entirely and "to refrain from

2    competing in the less lethal projectile market[,]" which "benefit[s] [] ATO and Perfect Circle

3    because Real Action is unable to compete as effectively" against them without having Apon and

4    Sun LLC suppliers.  FACC ¶¶ 164-65.  As discussed above, Real Action provides facts supporting

5    these allegations, which indicate that the named Counter-Defendants' retention of the benefits

6    from these activities may be unjust.  Accordingly, the Court finds Real Action has established at

7    least minimal merit for this claim and thus **DENIES** Counter-Defendants' Motion to Strike.

8    **K.      Conspiracy Under Indiana and California Law**

9            Counter-Defendants also move to strike Real Action's Conspiracy counterclaims.  Like

10   several of Real Action's other claims, its Conspiracy claims arise from protected activities related

11   to Counter-Defendants' filing and pursuit of the Indiana Action.  *See* FACC ¶¶ 169-171.

12   Accordingly, the issue is whether Real Action has shown a probability of prevailing on its

13   Conspiracy claims.

14           Under both California and Indiana law, conspiracy "is not an independent tort."  *Applied*

15   *Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (2004); *Crystal Valley Sales,*

16   *Inc. v. Anderson*, 22 N.E. 3d 646, 653 (Ind. Ct. App. 2014), *transfer denied*, 30 N.E.3d 1229 (Ind.

17   2015).  A claim for conspiracy requires proof of commission of an underlying tort within the

18   ambit of the conspiracy.  *Applied Equipment*, 7 Cal. 4th at 510-11; *Crystal Valley Sales*, 22 N.E.

19   3d at 653.  Furthermore, "[b]ecause civil conspiracy is so easy to allege, plaintiffs have a weighty

20   burden to prove it."  *Hardisty v. Moore*, 2015 WL 6393884, at *10 (S.D. Cal. Oct. 22, 2015)

21   (quoting *Choate v. Cty. of Orange*, 86 Cal. App. 4th 312, 333 (2000)).  There must be proof of a

22   mutual understanding to accomplish a common and unlawful plan; it is not enough that defendants

23   knew of an intended wrongful act—they must agree-expressly or tacitly-to achieve it.  *Id.*

24           Counter-Defendants challenge Real Action's Conspiracy claims on one ground: namely,

25   they contend Real Action's Conspiracy claims are based only on the "tort" of filing the Indiana

26   Action, i.e., malicious prosecution.  *See* MTS Br. at 23-24.  But Real Action's Conspiracy claims

27   go beyond relying only on the tort of malicious prosecution.  Real Action also alleges it was

28   prevented "from even procuring irritant projectiles from its contracted suppliers Apon and Sun

United States District Court
Northern District of California

44

LLC," and as noted above, Real Action has alleged and demonstrated a probability of prevailing on the underlying torts of inference with contractual relations and prospective economical advantage.  As such, the Court finds Real Action has demonstrated a probability of prevailing at least as to this part of the claim and **DENIES** Counter-Defendants' Motion to Strike.

**L.    Successor Liability**

Counter-Defendants challenge Real Action's successor liability claim under California's anti-SLAPP law, noting "this cause of action contains no new allegations of misconduct but merely asserts that UTS should be held liable for the protected activities of ATO."  MTS Br. at 13, 24.  In particular, Counter-Defendants argue Real Action has no reasonable probability of success on its successor liability claim, "because such a claim does not exist at law or common law."  MTS Br. at 24.  Again, Real Action did not respond to this specific argument.

"[S]uccessor liability is not a separate claim independent of [other] claims."  *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 822 (2013).  "To the contrary, successor liability is an equitable doctrine that applies when a purchasing corporation is merely a continuation of the selling corporation or the asset sale was fraudulently entered to escape debts and liabilities."  *Id.* (citations omitted).  "Successor liability requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable."  *Id.* at 823 (citations omitted).  Given the foregoing, Real Action's successor liability claim, listed as a separate cause of action, is DISMISSED.  Real Action may re-file its claims for successor liability in relation to its individual causes of action.[23]

**M.    Attorneys' Fees**

A defendant who prevails on an anti-SLAPP motion is entitled to recover attorney's fees and costs.  Cal. Civ. Proc. Code § 425.16(c); *S. B. Beach Prop. v. Berti*, 39 Cal. 4th 374, 379 (2006).  The fee provision of the anti-SLAPP statute applies in federal court.  *United States v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999)).  Counter-Defendants state they "will request recovery of attorneys' fees and costs[] and submit proof of the same

---

[23] The Court, however, makes no findings about whether Real Action will properly be able to allege successor liability for any claims.

1    through a separately noticed motion."  MTS Br. at 25.  The Court will await such briefing.

2        Real Action, however, asserts it too is entitled to fees, noting "[t]he Anti-SLAPP statute

3    provides 'If the court finds that a special motion to strike is frivolous or is solely intended to cause

4    unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff

5    prevailing on the motion, pursuant to Section 128.5.'"  MTS Opp'n at 11-12 (citing Cal. Civ. Proc.

6    Code § 425.16(c)(1) and Cal. Civ. Proc. Code § 128.5 ("Every trial court may order a party, the

7    party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by

8    another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause

9    unnecessary delay.")).  "Frivolous" is defined as:  "totally or completely without merit, or for the

10   sole purpose of harassing an opposing party."  Cal. Civ. Proc. Code § 128.5(b)(2).

11       As described above, the Court has found some merit in Counter-Defendants' anti-SLAPP

12   motion, and as such, the Court does not find that Counter-Defendants' Motion to Strike is

13   frivolous nor intended to cause unnecessary delay.  Accordingly, Real Action's claim for fees and

14   costs associated with defending this Motion is **DENIED**.

15                                        **CONCLUSION**

16       Based on the foregoing analysis, the Court (1) **GRANTS IN PART** and **DENIES IN**

17   **PART** Counter-Defendants' Motion to Strike (Dkt. No. 162); (2) **GRANTS IN PART** and

18   **DENIES IN PART** Counter-Defendants' Motion to Dismiss (Dkt. No. 159); and (3) **DENIES AS**

19   **MOOT** Real Action's Motion to Accept Security (Dkt. No. 158).  Accordingly, the following

20   counterclaims are stricken or dismissed without leave to amend:

21       • Wrongful Injunction claim – Federal law (Counterclaim 1)

22       • Wrongful Injunction claim – Indiana law (Counterclaim 2)

23       • Malicious Prosecution claim – Indiana law (Counterclaim 5)

24       • Tortious Conversion claim – Indiana and California laws (Counterclaim 8)

25       • Criminal Conversion claim – Indiana law (Counterclaim 9)

26   The following counterclaims are dismissed with leave to amend:

27       • False Designation of Origin claim against Gibson and Tiberius (part of

28            Counterclaim 10) (claims against ATO and UTS remain)

46

1      • Sherman Act claim  (Counterclaim 11)

2      • Successor Liability (stylized as Counterclaim 19) (leave to amend to allege

3          successor liability as to specific causes of action, not as a separate claim)

4      If Real Action decides to file any amended counterclaims in accordance with this Order, it

5  must do so **by November 25, 2015**.

6      **IT IS SO ORDERED.**

7

8  Dated: November 10, 2015

9  _____

10     MARIA-ELENA JAMES
       United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California