UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TACTICAL SYSTEMS, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>REAL ACTION PAINTBALL, INC., et al.,<br><br>　　　　　　Defendants.<br><hr>AND RELATED ACTION AND CROSS ACTION | Case No. 14-cv-04050-MEJ<br><br>**ORDER RE: MOTION TO DISMISS AND MOTION TO LIFT DISCOVERY STAY**<br><br>Re: Dkt. Nos. 193, 203 |

## INTRODUCTION

Real Action Paintball, Inc. and its principal, K.T. Tran, (collectively "Real Action")[1] filed multiple counterclaims in this matter (Second Am. Counterclaim ("SACC"), Dkt. No. 198), which United Tactical Systems, LLC ("UTS") and related Counter-Defendants (collectively with UTS, "Counter-Defendants")[2] now move to dismiss in part pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Mot., Dkt. No. 203. Real Action filed an Opposition (Dkt. No. 208), and Counter-Defendants filed a Reply (Dkt. No. 209). Also pending before the Court is Real Action's Motion for an Order to Lift the Stay on discovery. Dkt. No. 193. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Real Action's Motion to Lift the Discovery Stay and **GRANTS IN PART** and **DENIES IN PART** Counter-

---

[1] The Court refers to both K.T. Tran and Real Action Paintball, Inc. as "Real Action" as there is no material difference between the company and its principal for purposes of this Order. Counter-Defendants also sometimes refer to Real Action as "Counter-Claimants."

[2] "Counter-Defendants" refers to Advanced Tactical Ordnance Systems, LLC ("ATO"), Perfect Circle Projectiles LLC, Gary Gibson, Tiberius Arms, LLC, Tactical Air Games, Inc., Tyler Tiberius, Michael Blumenthal, David Piell, UTS, United Tactical Systems Holdings, LLC, and United Tactical Systems Intermediate Holdings, LLC.

Defendants' Motion to Dismiss for the following reasons.

## BACKGROUND

A more complete factual background in this case can be found in the Court's November 10, 2015 Order granting in part and denying in part Counter-Defendants' Motions to Dismiss and Strike Real Action's First Amended Counterclaim ("FACC"). Dkt. No. 191. To the extent Real Action has asserted new or different relevant allegations in the SACC, filed on November 23, 2015, those allegation are discussed below.

## MOTION TO LIFT DISCOVERY STAY

As to Real Action's Motion to Lift the Discovery Stay, in the Court's May 11, 2015 Order denying Counter-Defendants Perfect Circle, Gary Gibson, Michael Blumenthal, and David Piell's Motions to Dismiss for lack of personal jurisdiction, the Court consolidated this case (the "UTS Case") with *Real Action Paintball, Inc. v. Advanced Tactical Ordnance Systems, LLC et al.*, Case No. 14-2435-MEJ (N.D. Cal.) (the "ATO Case"). Dkt. No. 140. Previously, the Court had issued an Order in the ATO Case limiting the scope of discovery until the resolution of the pending jurisdictional motions. Specifically, the Court held that "[p]ending resolution of Defendants' motions to dismiss, all discovery in this case shall be limited to that which aids in determining whether this Court has jurisdiction." ATO Case, Dkt. No. 80. Now, following resolution of those personal jurisdiction motions and the consolidation of the ATO and UTS Cases, Real Action seeks to proceed with full discovery, while Counter-Defendants urge the Court to rule on their Motion to Dismiss before doing so. *See* Mot. to Lift Stay; Opp'n to Mot. to Lift Stay, Dkt. No. 201 (suggesting discovery open once pleadings have been settled).

As discussed below, this Order "settles" the pleadings in this case, and accordingly, to the extent it is necessary to do so, the Court now GRANTS Real Action's Motion to Lift the Discovery Stay. A related case management order is forthcoming.

## MOTION TO DISMISS

Turning to Counter-Defendants' Motion, they seek to dismiss Real Action's following counterclaims: (1) the tenth claim for false designation of origin against Tyler Tiberius and Gary Gibson; and (2) the eleventh claim for violations of the Sherman Act.

2

**A.     Legal Standard**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. False Designation of Origin Claim Against Tyler Tiberius and Gary Gibson

To prove an infringement/false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must demonstrate the following: (1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts. *See Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996).

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979) (citations omitted), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). Accordingly, courts have found owners and operators of a corporate entity to be directly liable for trademark and false designation of origin claims. *See, e.g.*, *Symantec Corp. v. Logical Plus, Inc.*, 2009 WL 3416178, at *4 (N.D. Cal. Oct. 20, 2009). They have also, however, rejected claims against officers of infringing corporate entities where plaintiff failed to provide allegations showing how those officers "directed or participated in the infringement directly[.]" *See id.* at *8.

The Court previously dismissed Real Action's False Designation of Origin claim against Gibson and Tiberius, the alleged owners of Perfect Circle and Tiberius Arms, respectively, finding that Real Action had failed to allege facts "suggest[ing] Gibson and Tiberius actually played any role in directing or participating in ATO's decision to use the Pepperball name" or otherwise "indicating they played an active role in ATO's decision-making process or why they might be

4

expected to play such a role (i.e., if such activity would be expected as a function of their positions within ATO, etc.)." Order re: Mot. to Dismiss & Strike at 34. The Court, however, permitted Real Action leave to amend this claim. *Id.* Counter-Defendants now assert that Real Action still fails to allege plausible allegations that Gibson or Tiberius directed or directly participated in the alleged infringement. Mot. at 4. Rather than alleging such facts, Counter-Defendants contend Real Action only added conclusory allegations about Gibson and Tiberius's involvement, which are no more than mere legal conclusions. *Id.* at 4-5. They further assert the SACC does not specify the allegedly tortious actions or how Gibson and Tiberius directly participated. *Id.*

Having reviewed the SACC, the Court finds Real Action now alleges sufficient facts supporting a False Designation of Origin claim against Tiberius and Gibson for purposes of the pleading stage. While previously Real Action's only allegation in this claim about Tiberius and Gibson was that they induced ATO to misrepresent itself as Pepperball Tech (*see* FACC ¶ 121, Dkt. No. 152), the SACC now contains more allegations about how Gibson allegedly hired and directed former Pepperball Tech employees to work for ATO and masquerade as Pepperball Tech (SACC ¶ 114) and how Tiberius allegedly caused the Pepperball Tech website to be created and caused ATO and UTS to advertise claims about Pepperball products on their websites (*id.* ¶¶ 117, 120). These allegations, in tandem with the continued allegations that Gibson and Tiberius formed ATO with their companies Perfect Circle (allegedly owned by Gibson) and Tactical Air and Tiberius Arms (allegedly co-owned by Tiberius) (*id.* ¶¶ 21-23), provide a plausible basis for concluding that Gibson and Tiberius participated, authorized, or directed in the conduct giving rise to Real Action's false designation claim. *Adobe Sys. Inc. v. Software Speedy*, 2014 WL 7186682, at *4 (N.D. Cal. Dec. 16, 2014) ("Personal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct . . . ." (quotation omitted)). Accordingly, Counter-Defendants' Motion to Dismiss Gibson and Tiberius from Real Action's False Designation claim is DENIED.

**C.     Sherman Act Claims**

In general, antitrust actions based on litigation activities are not permissible unless the lawsuit was a "sham," i.e., there is proof that (1) the suit was "objectively baseless in the sense

5

that no reasonable litigant could realistically expect success on the merits," and (2) there was subjective intent to use the litigation to interfere directly with the business relationships of a competitor. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (describing the *Noerr-Pennington*[3] doctrine, which establishes that those persons who petition the government for redress, including to the courts, are generally immune from antitrust liability). Of course, "[p]roof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim." *Id.* at 61.

The Court previously found that the FACC "f[e]ll short of pleading a viable Sherman Act violation" because it failed to allege that ATO had market power in a relevant geographic market. Order re: Mot. to Dismiss & Strike at 35. However, the Court granted Real Action leave to amend, and otherwise declined then to dismiss the claim outright in the event that Real Action could allege plausible facts supporting the factors in the *Professional Real Estate* test. *Id.* at 35-37. In doing so, the Court noted "Real Action need not necessarily show that the litigation against it was objectively baseless, but rather may allege facts that the litigation against others was objectively baseless." *Id.* at 36. The Court also noted that activities unrelated to a "petitioning activity" are not limited by *Professional Real Estate* or the related *Noerr-Pennington* doctrine. *Id.* (citing *Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 987 (N.D. Cal. 2012)).

Counter-Defendants assert that Real Action's SACC fails to overcome the limitations established by *Professional Real Estate* and the *Noerr-Pennington* doctrine and otherwise fails to state a Sherman Act claim. First, they contend Real Action has not alleged facts to show the initial litigation against Real Action or related defendants in that case—i.e., Apon International ("Apon"), and Conrad Sun and Sun LLC (often referred to collectively as "Sun")—was "objectively baseless." Second, to the extent Real Action attempts to make out an antitrust claim based on a reverse payment settlement as in *F.T.C. v. Actavis*, Counter-Defendants argue that case is inapposite and does not control. Third, they contend the SACC fails to alleged concerted action by Counter-Defendants. See Mot. at 5-8.

---

[3] *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

In response, Real Action points out that its SACC states the following:

> The suits in the Indiana federal court against Real Action, against Sun, and against APON, were each objectively baseless. The suit against Real Action, Sun and APON were objectively baseless insofar as the Alleged Monopolists (1) dissembled to the Indiana Court, (2) did not own the mark they claimed to own, (3) had no evidence of any kind that Real Action, or Sun, or APON ever unlawfully sold irritant projectiles bearing the Pepperball mark, (4) did not own the trade secret they claimed to own, and (5) lacked jurisdiction to sue Real Action in Indiana, making any orders of the Court to the contrary "void ab initio." *Federal Sav. and Loan Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 521 (7th Cir. 1980)[] (holding "where as here, the court lacks jurisdiction to adjudicate the principal matter, its orders . . . are likewise . . . void ab initio").

SACC ¶ 126.[4] As an additional sixth point, Real Action alleges:

> Evidence of the objectively baseless nature of the lawsuits against Sun and APON can also be found in the Settlement Agreements. In the respective Settlement Agreements with Sun and APON on the one hand and Counter-Defendants on the other, Counter-Defendants were required to make payments to Sun and APON. Had the suits against Sun and/or APON been valid then the Counter-Defendants would have received payments from those the then-defendants, not paid money to them.

*Id.* ¶ 127.

The Court considers each of these allegations to determine whether Real Action overcomes the limitations established by *Professional Real Estate* and *Noerr-Pennington* or otherwise shows these limitations are inapplicable.

1. Allegations in Paragraph 126

Paragraph 126 of the SACC addresses five separate points on which Real Action alleges the Indiana Action was objectively baseless. Approaching these points in reverse order, as to Real Action's fifth point, which is premised on the fact that the Indiana Court did not have personal jurisdiction over Real Action and therefore any actions by that court or ATO were objectively baseless, the Court finds this argument unpersuasive. The question in determining whether an action was objectively baseless is whether "no reasonable litigant could realistically expect success *on the merits*[.]" *Prof'l Real Estate*, 508 U.S. at 60-61 (emphasis added). Real Action's

---

[4] Real Action's "Alleged Monopolists" refers to ATO, Perfect Circle, Tiberius Arms, and Tactical Air Games. SACC ¶ 124.

arguments about the Indiana Court's exercise of personal jurisdiction do not show that ATO could not have realistically expected success *on the merits* of their trademark and related claims against Real Action or against Apon, Conrad Sun, or Sun LLC.  In other words, ATO's mistake in filing its claims against Real Action in Indiana does not undermine the reasonableness of the actual merits of ATO's claims.

As to Real Action's second, third, and fourth points, they all relate to claims that the Indiana Court found ATO had demonstrated a likelihood of success on the merits for purposes of preliminary injunctions against Real Action.  *See* Req. for Judicial Notice, Ex. C (Indiana Court's preliminary injunction order), Dkt. No. 203-1.[5]  Even if Real Action is correct that the Indiana Court's rulings were void ab initio for lack of jurisdiction over Real Action, its findings undermine the plausibility of Real Action's allegations indicating that a reasonable litigant could not have realistically expected success on the merits of ATO's claims in the underlying litigation.  *Prof'l Real Estate*, 508 U.S. at 62-63 ("Probable cause to institute civil proceedings requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" (quotation and some internal marks omitted)).  Real Action has not otherwise shown that ATO lacked probable cause to bring suit against Real Action, Apon, Conrad Sun, and Sun LLC; indeed, this Court, like the Indiana Court, found that ATO was likely to succeed in several of its claims against Real Action.  *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1532 (9th Cir. 1991) ("Simply stated, a suit brought with probable cause does not fall within the sham exception to the *Noerr-Pennington* doctrine."), *aff'd*, *Prof'l Real Estate*, 508 U.S. at 60 ("If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail." (footnote omitted)).

Finally, Real Action's first point indicating that ATO concealed information from the Indiana Court is not adequately explained and lacks plausibility at this point, particularly in light

---

[5] The Court previously took judicial notice of this document in its preliminary injunction order. Dkt. No. 85 at 5, 8-9; *see also Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (it is appropriate to take judicial notice of court filings and other matters of public record such as pleadings in related litigation).

of this Court's own findings in the preliminary injunction order. *See* Preliminary Inj. Order, Dkt. No. 85.

In sum, the allegations of paragraph 126 of the SACC lack plausibility to show that ATO's claims in the Indiana Action were objectively baseless such that ATO and the related Counter-Defendants must be deprived of *Noerr-Pennington* antitrust immunity. In other words, Real Action may not maintain its antitrust claims against Counter-Defendants related to conduct based on the allegations in paragraph 126 as Counter-Defendants are entitled to antitrust immunity under *Professional Real Estate* and the *Noerr-Pennington* doctrine. Accordingly, the Court GRANTS Counter-Defendants' Motion to Dismiss Real Action's Sherman Act claims to the extent they are based on claims alleged in Paragraph 126.

2. <u>Allegations in Paragraph 127</u>

Paragraph 127, however, raises facts that warrant further consideration, alleging that while ATO sued Apon, Conrad Sun, and Sun LLC in the underlying Indiana Action, in their settlement agreements, ATO ended up paying those defendants instead of the other way around. In doing so, ATO agreed to pay Apon to stay out of the irritant projectile market for ten years (SACC ¶¶ 48, 94) and Sun to "get out of the business" and breach its contract with Real Action (*id.* ¶¶ 91-93). The question then is whether these allegations based on the settlement agreements with Apon and Sun could support a viable antitrust claim.

Counter-Defendants contend that, under *Columbia Pictures*, antitrust immunity is generally extended to the "settlement process" and notes Real Action has made no attempt to distinguish *Columbia Pictures* from the circumstances here. Reply at 4. In *Columbia Pictures*, plaintiff Columbia Pictures sued hotel operators for copyright infringement after the operators rented video discs to hotel guests. Defendant Professional Real Estate Investors ("PREI") brought antitrust counterclaims based in part on Columbia Pictures' refusal to enter into settlement negotiations. PREI issued a settlement offer to license the videos from Columbia Pictures, and when it rejected the offer, PREI alleged Columbia Pictures violated antitrust laws with its "concerted refusal to deal." The Ninth Circuit concluded *Noerr-Pennington* applied to such conduct because "[a] decision *to accept or reject* an offer of settlement is conduct incidental to the

9

prosecution of the suit and not a separate and distinct activity which might form the basis of the antitrust liability." 944 F.2d at 1528 (emphasis added).

Subsequent courts have limited *Columbia Pictures*' holding to its facts, i.e., cases involving the offer or rejection of a settlement. *See Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 986-87 (N.D. Cal. 2012). As Judge Susan Illston noted in *Select Portfolio*, "[t]he offer and rejection of a settlement to resolve the claims raised in a petition are far more related to that petition then later actions taken pursuant to terms of a settlement agreement." *Id.* Thus, before applying the *Noerr-Pennington* doctrine, courts have more cautiously considered whether a defendant's conduct is in fact incidental to its prosecution of a suit or whether the conduct can be more fairly said to be outside of or unrelated to the petitioning activity. *See id.* (finding *Noerr-Pennington* inapplicable where the defendant's challenged conduct was based on a settlement agreement term that was unrelated to the petitioning activity in the underlying case); *eBay Inc. v. Bidder's Edge Inc.*, 2000 WL 1863564, at *2 (N.D. Cal. July 25, 2000) ("BE's antitrust claims may not be dismissed under the *Noerr-Pennington* doctrine because at least some of eBay's allegedly anti-competitive conduct, such as eBay's alleged interference with a BE advertising contract, is unrelated to any protected activity." (footnote omitted)); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1079 (9th Cir. 2004) (reflecting skepticism that the *Noerr-Pennington* doctrine applied where defendants' challenged conduct related to the issuance of an allegedly abusive discovery request and rejecting the notion that courts should only look to the merits of the underlying litigation to determine immunity rather than the allegedly unlawful conduct itself).

Counter-Defendants assert that "[t]he relief gained by ATO in reaching settlements with Sun and APON was not 'unrelated' to ATO's petitioning activity." Reply at 5. They explain that "[t]he settlement terms which Counter-Claimants allege to be anti-competitive were consistent with ATO's prayer for injunctive relief in the Indiana Action" and that "trade secret misappropriation and trademark claims are by nature anti-competitive because they cease or discourage business activity on the basis that it violates trademark or trade secret laws. ATO's settlement agreements with Sun and APON were no exception." *Id.* Additionally, Counter-Defendants challenge the application of *Select Portfolio* to this case, distinguishing that case from

1  the circumstances here on the basis of the outcome of the settlement agreements. *Id.* at 4-5 n.1.

2  They explain:

3
4
5
6
7
> Apon and Sun being restricted from doing business with Real Action was a foreseeable result of the Indiana Action because both trademark and trade secret laws allow for preliminary injunctions to enjoin business activity. On the other hand, the defrauding of a bank in *Select Portfolio* by reporting a lower price for a short sale was never a foreseeable result of the foreclosure action preceding the *Select Portfolio* action. The settlement in the Indiana Action was foreseeable, but the settlement in *Select Portfolio* was procured by fraud.

8  *Id.*

9   There is some logic to Counter-Defendants' theory about the foreseeability of the terms of
10  a settlement agreement based on the claims raised in the underlying litigation being an important
11  indicator of the relatedness of the allegedly unlawful conduct to the petitioning activity.  But what
12  is missing from Counter-Defendants' explanation is how the allegedly monopolistic outcome of
13  the settlement agreements—with Apon and Sun allegedly agreeing to stay out of the irritant
14  projectile market—was a foreseeable outcome of the trademark and trade secret claims ATO
15  brought against them in the Indiana Action.  The alleged outcome of the settlement agreements
16  appears to go beyond the foreseeable outcome of ATO's litigation against Apon and Sun.

17   Although Counter-Defendants indicate that trademark rights are somewhat anticompetitive
18  in nature, and therefore some anticompetitive result was a probable consequence of the trademark
19  litigation against Apon and Sun, those rights are not unlimited.  As courts have recognized,
20  "[b]ecause a trademark . . . merely enables the owner to bar others from use of the mark, as
21  distinguished from competitive manufacture and sale of identical goods bearing another mark, . . .
22  the opportunity for effective antitrust misuse of a trademark, as distinguished from collateral anti-
23  competitive activities on the part of the manufacturer or seller of the goods bearing the mark, is so
24  limited that it poses a far less serious threat to the economic health of the nation." *Guichard v.*
25  *Mandalay Pictures, LLC*, 2005 WL 2007883, at *3 (N.D. Cal. Aug. 22, 2005) (quoting *Clorox Co.*
26  *v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997)) (some internal marks omitted); *see also*
27  *Cal. Packing Corp. v. Sun-Maid Raisin Growers of Cal.*, 165 F. Supp. 245, 250-51 (S.D. Cal.
28  1958) (finding that private agreement limiting the use of a certain mark does not raise antitrust

concerns because it only restricted use of the name, rather than preventing competitor from engaging in competitive production and sales in the market).

Real Action's SACC allegations indicate the Apon and Sun settlement agreements prevent these companies from competing in the market against ATO or from working with Real Action Paintball as it attempts to compete with ATO. SACC ¶¶ 48, 91-94, 130-31. Indeed, Real Action indicates ATO paid Apon and Sun to secure their agreements not to compete. *Id.* ¶ 127. Taking these facts as true, Real Action plausibly alleges that at least some of the terms in the Apon and Sun settlement agreements and related agreed-on conduct go beyond ATO's petitioning activities and its claims in the Indiana Action. While Counter-Defendants will have an opportunity to test these allegations at summary judgment, at present, the Court cannot find Counter-Defendants' alleged conduct related to the Apon and Sun settlement agreements sufficiently related or incidental to ATO's petitioning activities in the Indiana Action, and as such, finds the *Noerr-Pennington* doctrine does not bar Real Action's related antitrust claims at this time.

Likewise, at this stage, the Court need not find whether *F.T.C. v. Actavis* applies to Real Action's Sherman Act claims. For purposes of this Order and the Court's previous Order on Counter-Defendants' Motions to Dismiss and Strike, *Actavis* primarily represents the cautious skepticism that may be applied in the context of reverse payment settlement agreements, i.e., where the plaintiff ends up paying the defendant essentially not to compete, rather than the defendant paying the plaintiff as would usually be the case, as well as the recognition that settlements are not necessarily absolutely immune from the antitrust laws. *See F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223, 2233 (2013) (considering antitrust liability in the context of "reverse payment settlements," in which "a party with no claim for damages . . . walks away with money simply so it will stay away from the patentee's market."). Both parties ask the Court to weigh in further about the applicability of *Actavis* to this case, but the Court declines to do so at this time given the state of the law and the stage of this case. The so-called "reverse payment liability" alleged in the SACC (¶ 134) does not at this point represent a claim separate and apart from Real Action's other Sherman Act claims, and therefore it is not necessary to parse the SACC to such a degree at this time. At present, it suffices that the *Noerr-Pennington* doctrine does not presently

bar Real Action's Sherman Act claims to the extent they are based on the Apon and Sun settlement agreements.

As a final note, Counter-Defendants challenge whether the SACC alleges concerted action. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010) ("Section 1 applies only to concerted action that restrains trade. Section 2, by contrast, covers both concerted and independent action, but only if that action 'monopolize[s],' . . . or 'threatens actual monopolization[.]'" (quotations omitted)). They assert that ATO was the only Counter-Defendant who was party to the Apon and Sun settlement agreements and that the SACC does not allege facts showing that any party other than ATO engaged in anticompetitive behavior. Mot. at 8. Real Action's response focuses only on how Counter-Defendants were involved in conduct related to allegations the Court finds implausible and incapable of supporting an antitrust claim, as discussed above. *See* SACC ¶ 126; Opp'n at 9-11. Nonetheless, in Counter-Defendants' Reply, they indicate their request for dismissal on the basis of inadequate allegations of concerted action is limited to removing Tiberius Arms from this claim. *See* Reply at 8 (in the heading, only noting that "Counter-Claimants' Allegations Of Concerted Action Are Inadequate As To Tiberius Arms"). Specifically, they note "Counter-Claimants do not allege that Tiberius Arms was a party to the settlement agreements or a signatory to any guaranty." *Id.* They explain that "[a]lthough the FACC alleged that Tiberius Arms was a signatory to a guaranty referenced by the settlement agreement between Sun and ATO (Dkt. No. 152 at ¶ 134), this allegation was removed in the SACC. (See Dkt. No 198 at ¶ 132 ('Tactical Air and Perfect Circle were parties . . . by virtue of the Guaranty . . .).)'". *Id.* As Counter-Defendants only appear to challenge whether Tiberius Arms was involved in concerted action, the Court limits this Order to consideration of that issue.

Having reviewed the SACC, while Real Action provides conclusory allegations that Tiberius Arms was one of the "Alleged Monopolists," and that through their "concerted agreements" ATO entered in to the settlement agreements with Apon and Sun (SACC ¶¶ 124, 130-31), the SACC does not articulate what basis Real Action alleges Tiberius Arms was part of a concerted agreement to form or establish the settlement agreements, or how Tiberius Arms was even involved. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff

13

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also* SACC ¶ 132 (explaining how Tactical Air and Perfect Circle were parties to the Sun agreement by virtue of a guaranty).  Without more, the Court agrees Real Action has not alleged facts supporting that Tiberius Arms was involved in concerted action with the other "Alleged Monopolists" as to the settlement agreements. Accordingly, the Court **GRANTS** Counter-Defendants' Motion to Dismiss Tiberius Arms from Real Action's Sherman Act claims to the extent those claims are based on concerted action.

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Real Action's Motion to Lift the Stay on Discovery and **GRANTS IN PART** and **DENIES IN PART** Counter-Defendants' Motion to Dismiss as follows:

(1) The Court **DENIES** Counter-Defendants' Motion to Dismiss Real Action's False Designation of Origin Claim against Tyler Tiberius and Gary Gibson.

(2) The Court **GRANTS** Counter-Defendants' Motion to Dismiss Real Action's Sherman Act claims to the extent they are based on the allegations in SACC ¶ 126, which Counter-Defendants have shown are barred under *Noerr-Pennington*.

(3) The Court, however, **DENIES** Counter-Defendants' Motion to Dismiss Real Action's Sherman Act claims to the extent they are based on the allegations in SACC ¶ 127, related to the procurement of the Apon and Sun settlement agreements, which fall outside *Noerr-Pennington*'s reach as currently alleged.  That said, Real Action has not alleged plausible facts about how Tiberius Arms engaged in concerted action related to the settlement agreements, and accordingly, the Court **GRANTS** Counter-Defendants' Motion to Dismiss Tiberius Arms from Real Action's Sherman Act claims to the extent those claims are based on concerted action.

**IT IS SO ORDERED.**

Dated: February 10, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge