UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TACTICAL SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>REAL ACTION PAINTBALL, INC., et al.,<br><br>    Defendants.<br><br>AND RELATED ACTION AND CROSS ACTION | Case No. 14-cv-04050-MEJ<br><br>**ORDER RE: MOTIONS FOR LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 241, 247 |

## INTRODUCTION

Pending before the Court are two motions by Real Action Paintball, Inc. and its principal, K.T. Tran, (collectively, "Real Action")[1] to file a Third Amended Counterclaim ("TACC Mot."; Dkt. No. 241) and First Amended Answer and Affirmative Defenses ("FAA Mot."; Dkt. No. 247). United Tactical Systems, LLC ("UTS") and related Counter-Defendants (collectively with UTS, "Counter-Defendants")[2] oppose both motions. TACC Opp'n, Dkt. No. 242; FAA Opp'n, Dkt. No. 254. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the TACC Motion but **DENIES** the FAA Motion for the following reasons.

---

[1] The Court refers to both K.T. Tran and Real Action Paintball, Inc. as "Real Action" as there is no material difference between the company and its principal for purposes of this Order. Counter-Defendants also sometimes refer to Real Action as "Counter-Claimants."

[2] "Counter-Defendants" refers to Advanced Tactical Ordnance Systems, LLC ("ATO"), Perfect Circle Projectiles LLC, Gary Gibson, Tiberius Arms LLC, Tactical Air Games, Inc., Tyler Tiberius, Michael Blumenthal, David Piell, UTS, United Tactical Systems Holdings, LLC, and United Tactical Systems Intermediate Holdings, LLC.

# BACKGROUND

**A.     General Background**

UTS and Real Action sell irritant-filled projectiles. Compl. ¶ 2, Dkt. No. 1; Second Amended Counterclaim ("SACC") ¶¶ 19, 28, Dkt. No. 198. Typically used by law enforcement or military, these projectiles are non-lethal capsules containing a pepper substance that can be shot like paintballs. SACC ¶ 18. UTS's predecessor in interest, Advanced Tactical Ordnance Systems, LLC ("ATO"), an Indiana corporation, previously brought suit against Real Action, a California company, in a case styled *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc., et al.*, Case No. 12-00296-JVB-RBC (N.D. Ind.) (the "Indiana Action"), alleging Real Action infringed on its "PepperBall" trademark by making statements implying Real Action sold PepperBall projectiles, among other things. Compl. ¶¶ 1, 36; SACC ¶¶ 30-31. ATO alleges it acquired PepperBall Technologies, Inc. in 2012, procuring the use of the PepperBall mark, among other things. Compl. ¶ 2.

ATO obtained a temporary restraining order and later a preliminary injunction in the Indiana Action to stop Real Action's use of the PepperBall mark and related acts by Real Action. Compl. ¶ 36; SACC ¶ 35. Meanwhile, Real Action challenged whether the Northern District of Indiana properly invoked personal jurisdiction over it. SACC ¶ 43. The Court of Appeals for the Seventh Circuit confirmed the Indiana court did not have personal jurisdiction over Real Action, and the Indiana court consequently dismissed the suit. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014).

The case now resides in this Court. Real Action filed the first suit, styled as *Real Action Paintball, Inc. v. Advanced Tactical Ordnance Systems, LLC et al.*, Case No. 14-2435-MEJ (N.D. Cal.) (the "ATO Case"). It asserted 17 claims against ATO, including claims for unfair competition and restraint of trade. ATO Case, Dkt. No. 1. After Real Action filed suit, UTS was formed and purchased ATO. Compl. ¶ 2. UTS then filed the present lawsuit against Real Action (the "UTS Case"), and moved for a temporary restraining order. Dkt. No. 27. The Court denied that motion but construed it as a Motion for a Preliminary Injunction. Dkt. No. 34. The Court ultimately granted in part and denied in part UTS's Motion for a Preliminary Injunction, enjoining

Real Action from using the PepperBall name to refer to its irritant projectiles. Dkt. No. 85. Real Action then counter-sued UTS for various claims, many of which were related to the claims against ATO. Dkt. No. 51. The Court subsequently consolidated the ATO and UTS Cases under the UTS Case. Dkt. No. 140.

On August 2, 2016, the parties attended a settlement conference with Magistrate Judge Joseph Spero. Dkt. No. 270. Although the case did not settle, the parties agreed to the following:

> All parties agree to file cross motions for summary judgment on the following issue:
> 1. Whether the registered trademark(s) at issue in this case was validly transferred to plaintiff and 2. Whether the registered trademark(s) at issue had lapsed before it was transferred.
> All parties agree to complete discovery on these issues within thirty (30) days from today (8/2/16) by producing all documents relating to the trademark registrations and renewals, and to the transfer of the registered trademark(s) from the original registrant to the plaintiff and all steps in between.

*Id.*

**B.    Facts re: TACC Motion**

On June 16, 2015, Real Action filed its First Amended Counterclaim. Dkt. No. 152. Counter-Defendants moved to dismiss certain counterclaims, and Real Action filed its SACC on November 23, 2015 (Dkt. No. 198). Pursuant to the Court's March 16, 2016 Case Management Order, the deadline for parties to seek leave amend their pleadings was not until July 14, 2016. Dkt. No. 218. Real Action filed its motion for leave to amend and file its TACC on May 19, 2016. *See* Proposed TACC, Dkt. No. 241-1.

The proposed TACC has two differences from the SACC. First, the TACC drops claims against one of the Counter-Defendants: Tiberius Arms, LLC. Second, the TACC adds a new claim, Counterclaim 19, which seeks a declaratory judgment for cancellation of the PEPPERBALL federal trademark registration. *See* Proposed TACC.

Relatedly, Real Action previously initiated a cancellation proceeding before the United States Patent and Trademark Office ("PTO") seeking cancellation of the "pepperball" mark, but in December 2015, the PTO informed the parties it suspended the cancellation proceeding pending

the final outcome of the present lawsuit. Overhauser Decl. ¶¶ 9-10, Dkt. No. 241.[3]

Meanwhile, in this action, UTS has served discovery upon Real Action seeking "all documents, data and tangible things the Defendants claim support their assertion that the term 'pepperball' is generic." *Id.* ¶ 8.

### C. Facts re: FAA Motion

Real Action also now proposes to amend its Answer to include two new affirmative defenses: (1) a "sixteenth affirmative defense" based on its allegations that UTS' claims are barred because its "predecessor-in-interest, Advanced Tactical Ordnance Systems, LLC released Real Action Paintball, Inc. from all claims it had against it"; and (2) a "seventeenth affirmative defense" alleging that each of UTS' claims is barred by the statute of limitations. Proposed FAA, Dkt. No. 247-1.

## LEGAL STANDARD

Outside of Federal Rule of Civil Procedure ("Rule") 15's permissive amendment timeline, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted). A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining [] factors, there

---

[3] Mr. Overhauser filed his declaration with the TACC Motion as opposed to in a separate docket entry. In the future, such declarations should be filed in separate docket entries for a clearer record. *See also* Civ. L.R. 7-2, 7-5.

exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend." *Id.* at 1052 (emphasis in original). "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

**DISCUSSION**

**A.     TACC Motion**

The Court begins with Real Action's Motion for Leave to File its proposed TACC. First, Counter-Defendants have no issue with dismissing Tiberius Arms LLC from this case; consequently, the Court grants Real Action leave to amend to withdraw Tiberius Arms LLC from Real Action's Counterclaims and dismisses Tiberius Arms LLC.

Second, turning to Counter-Defendants' primary objections, they argue (1) Real Action unduly delayed in seeking leave to add its cancellation claim, despite having prior opportunities to amend; (2) Counter-Defendants will be prejudiced by the potential additional discovery related to the proposed cancellation claim; and (3) the cancellation claim is futile.

Having considered and weighed these arguments, the Court finds leave should be granted. First, while Real Action could have brought this counterclaim earlier and has not fully explained why it did not do so, ultimately the fact that Real Action now seeks to assert this claim does not meaningfully prejudice Counter-Defendants nor will it cause further delay in this matter. Real Action has demonstrated that some discovery has already begun on this issue, and it is not a new theory that will significantly shift or delay the case; the issue raised by this counterclaim goes to the protection and ownership of the mark in this case—legal issues the parties anticipated addressing in this case. *See* Case Management Conference Statement ¶ 3, Dkt. No. 216; *cf. AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (finding undue delay where plaintiff "never provided a satisfactory explanation of why, twelve months into the litigation, it so drastically *changed* its litigation theory" (emphasis added)); *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) ("The new allegations would totally alter the basis of the action, in that they covered different acts, employees and time periods

1  necessitating additional discovery.  Finally, a motion for summary judgment was pending and
2  possible disposition of the case would be unduly delayed by granting the motion for leave to
3  amend.  These factors form the basis of a proper exercise of discretion by the trial court in refusing
4  to allow amendment.").  Furthermore, as "[t]he party opposing amendment[,]" Counter-
5  Defendants "bear[] the burden of showing prejudice."  *DCD Programs*, 833 F.2d at 187.  But
6  "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery
7  needed by the non-moving party *in itself* constitutes a sufficient showing of prejudice."  *Tyco*
8  *Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009)
9  (emphasis added)).  Counter-Defendants' only explanation as to why amendment is prejudicial is
10 the generalized need to participate in further discovery.  Even so, Counter-Defendants do not
11 articulate why they believe they will need to conduct significant additional discovery, or what
12 extra discovery they believe Real Action will seek.  Consequently, the Court cannot find that delay
13 or prejudice counters against amendment.

14        Finally, as to futility, "[a] motion for leave to amend may be denied if it appears to be
15 futile or legally insufficient.  However, a proposed amendment is futile only if no set of facts can
16 be proved under the amendment to the pleadings that would constitute a valid and sufficient
17 claim[.]"  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  The
18 standard to be applied is identical to that on a motion to dismiss for failure to state a claim under
19 Rule 12(b)(6).  *Id.*  To satisfy the Rule 12(b)(6) pleading standard, a plaintiff must plead his claim
20 with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds
21 upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must
22 contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its
23 face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court
24 to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*
25 *v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and internal marks omitted).  Counter-Defendants
26 assert Real Action's cancellation claim is futile because Real Action has "no basis" to allege (1) its
27 standing to cancel the mark or (2) valid grounds for canceling the registration.
28        As to standing, Counter-Defendants argue Real Action "cannot properly allege standing"

because it has "not plead[ed] that it has been damaged or that it is likely to be damaged" by UTS's trademark. TACC Opp'n at 6 (citing Proposed TACC ¶¶180-192). They contend Real Action has not and cannot "show a real and rational basis for his belief that he will suffer damage." *Id.* (quoting *Law v. Harvey*, 2007 WL 2990426, at *4 (N.D. Cal. Oct. 11, 2007)). Among other things, Real Action responds that it can and has alleged damage by asserting that it is harmed by any injunction prohibiting it "from using the term PEPPERBALL, and ¶ 34 of Real Action's Third Amended Counterclaim alleges that 'an injunction would damage its business in California.'" TACC Reply at 4 & n.1 (citing Proposed TACC and indicating cancellation claim incorporates all preceding paragraphs by reference).

In light of this argument and the TACC as a whole, the Court cannot find Real Action's cancellation claim is futile on standing grounds. Real Action has been precluded from using the PepperBall mark, and it alleges it is harmed by this preclusion. One of the ways UTS successfully precluded Real Action from using the PepperBall mark in the past is through enforcement of its alleged trademark, and it continues to seek an injunction on the basis of ownership of the PepperBall. Consequently, Real Action's alleged harm is connected to the validity of UTS' mark. *See Law*, 2007 WL 2990426, at *3-4 ("Standing is the more liberal of the two elements" needed to sustain a petition for cancellation and "requires only that a party believe that it is likely to be damaged by the registration." (quoting *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000))).

As to the basis for Real Action's cancellation claim, Counter-Defendants raise a number of arguments about its futility. First, they argue there is "no question that UTS owns a valid trademark for and is the sole manufacturer of PepperBall," citing documents filed with their preliminary injunction motion as well as the preliminary injunction order in the Indiana Action. TACC Opp'n at 6-7. But there remain questions of fact underlying these arguments which the Court cannot resolve at this point, and the Indiana Court's decision at the preliminary injunction phase is not finally dispositive of the issue. Second, while Counter-Defendants articulate some frustration about the PTO proceedings, including the fact that Real Action did not originally allege the PepperBall mark was generic and allegedly did not provide UTS with notice of these

7

proceedings (*id.* at 6-7), none of this goes to the futility of Real Action's claims.  Ultimately, Real Action alleges the PepperBall mark is generic and suffers procedural inadequacies related to the transfer of ownership of the mark.  Proposed TACC ¶¶ 186-89; *see* 15 U.S.C. § 1064(3) (grounds for cancellation include "if the registered mark becomes the generic name for the goods or services, . . . is functional, or has been abandoned, or its registration was obtained fraudulently or contrary" to the provisions of the Act).  Consequently, the Court cannot find Real Action's proposed counterclaim is futile at this time.

Given the foregoing, the Court will allow Real Action leave to file its FACC to add its cancellation counterclaim.

**B.     FAA Motion**

Turning to Real Action's Motion for Leave to file its FAA, Real Action proposes to assert two new affirmative defenses based on "release" and on statute of limitations rounds:

> SIXTEENTH AFFIRMATIVE DEFENSE
> All of Plaintiff's claims are barred because Plaintiff's predecessor-in-interest, Advanced Tactical Ordnance Systems, LLC released Real Action Paintball, Inc. from all claims it had against it. Because Plaintiff alleges that its claims are predicated on it having acquired certain rights from Advanced Tactical Ordnance Systems, LLC, but those rights were, in fact, non-existent due in part to the release, and because Plaintiff's claims against defendant K.T. Tran are predicated on Plaintiff's claims against Real Action Paintball, Inc. having merit, when in fact they have been released, Plaintiff's claims against K.T. Tran are also subject to this defense or release.
>
> SEVENTEENTH AFFIRMATIVE DEFENSE
> Each of Plaintiff's claims is barred by the applicable statute of limitations.

Proposed FAA at 34-35, Dkt. No. 247-1.

Counter-Defendants' primary argument in opposing Real Action's Motion is that Real Action provides extremely limited factual bases for its proposed amended defenses in both its proposed FAA and its Motion.  *See generally* FAA Opp'n.

The Court agrees.  At minimum, the "sufficiency of pleading an affirmative defense" is based on "whether it gives plaintiff fair notice of the defense."  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (further noting the federal rules apply even to defenses brought pursuant to state law); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010)

(applying the fair notice pleading approach from *Wyshak*).[4] At this point the Court itself does not have fair notice about the basis for these defenses—and as neither the proposed FAA nor Real Action's FAA provide that information, the Court is unable to weigh the factors associated with determining whether leave should be granted. Moreover, while there is a presumption in favor of granting leave to amend, Real Action has not given the Court any basis for why justice requires these proposed amendments. Accordingly, the Court denies Real Action's Motion for Leave to Amend its Answer and Affirmative Defenses without prejudice.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Real Action's Motion for Leave to Amend to File its First Amended Counterclaim, including dismissal of Tiberius Arms LLC, but **DENIES WITHOUT PREJUDICE** Real Action's Motion for Leave to File an Amended Answer and Affirmative Defense.

Real Action must file its First Amended Counterclaim by **September 1, 2016**.

**IT IS SO ORDERED.**

Dated: August 26, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[4] *But see Martinez v. Cty. of Sonoma*, 2016 WL 1275402, at *1 (N.D. Cal. Apr. 1, 2016) (indicating the Ninth Circuit has not specifically determined what pleading standard applies to affirmative defenses).