UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TACTICAL SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>REAL ACTION PAINTBALL, INC., et al.,<br><br>Defendants. | Case No. 14-cv-04050-MEJ<br><br>**ORDER RE: RENEWED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 335 |

## INTRODUCTION

Defendants Real Action Paintball, Inc. and K.T. Tran (collectively, "Real Action") filed a Renewed Motion to File a First Amended Answer ("FAA") pursuant to Federal Rule of Civil Procedure 15(a). Mot., Dkt. No. 335. Plaintiff United Tactical Systems, LLC ("UTS") filed an Opposition (Dkt. No. 340) and Real Action filed a Reply (Dkt. No. 343). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **DENIES** the Motion for the following reasons.

## BACKGROUND

**A.  Factual Background**

UTS and Real Action sell irritant-filled projectiles. Compl. ¶ 2, Dkt. No. 1; Third Amended Counterclaim ("TACC") ¶¶ 19, 28, Dkt. No. 198. Typically used by law enforcement or the military, these projectiles are non-lethal capsules containing a pepper substance that can be shot like paintballs. TACC ¶ 18. UTS's predecessor in interest, Advanced Tactical Ordnance Systems, LLC ("ATO"), an Indiana corporation, previously brought suit against Real Action, a California company, in a case styled *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc., et al.*, Case No. 12-00296-JVB-RBC (N.D. Ind.) (the "Indiana Action"), alleging

Real Action infringed on its "PepperBall" trademark by making statements implying Real Action sold PepperBall projectiles, among other things. Compl. ¶¶ 1, 36; TACC ¶¶ 30-31. ATO alleges it acquired PepperBall Technologies, Inc. in 2012, procuring the use of the PepperBall mark. Compl. ¶ 2.

ATO successfully enjoined Real Action from using the PepperBall mark in the Indiana Action. Compl. ¶ 36; TACC ¶ 35. Real Action challenged whether it was subject to personal jurisdiction in the Northern District of Indiana. TACC ¶ 43. The Court of Appeals for the Seventh Circuit found the Indiana district court did not have personal jurisdiction over Real Action, and the Indiana Action consequently was dismissed. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014).

The case now resides in this Court. Real Action filed the first suit, styled as *Real Action Paintball, Inc. v. Advanced Tactical Ordnance Systems, LLC et al.*, Case No. 14-2435-MEJ (N.D. Cal.) (the "ATO Case"). It asserted 17 claims against ATO, including claims for unfair competition and restraint of trade. ATO Case, Dkt. No. 1. After Real Action filed suit, UTS was formed and the newly created entity purchased ATO. Compl. ¶ 2. UTS then filed the present lawsuit against Real Action (the "UTS Case"), and moved for a temporary restraining order. Dkt. No. 27. The Court denied that motion but construed it as a Motion for a Preliminary Injunction. Dkt. No. 34. The Court ultimately granted in part and denied in part UTS's Motion for a Preliminary Injunction, enjoining Real Action from using the PepperBall name to refer to its irritant projectiles. Dkt. No. 85. Real Action then counter-sued UTS for various claims, many of which were related to the claims against ATO. Dkt. No. 51. The Court subsequently consolidated the ATO and UTS Cases under the UTS Case. Dkt. No. 140.

**B.  Real Action's Previous Motion to Amend**

On June 9, 2016, Real Action filed a motion for leave to file a first amended answer. Dkt. No. 247. Real Action sought to add two affirmative defenses: (1) a "sixteenth affirmative defense" based on its allegations that UTS' claims are barred because its "predecessor-in-interest, Advanced Tactical Ordnance Systems, LLC released Real Action Paintball, Inc. from all claims it had against it"; and (2) a "seventeenth affirmative defense" alleging that the statute of limitations

2

bars each of UTS' claims. First Proposed FAA, Dkt. No. 247-1. The Court denied that request without prejudice. FAA Order, Dkt. No. 335. The Court found that because it "d[id] not have fair notice about the basis for these defenses—and as neither the proposed FAA nor Real Action's FAA provide that information, the Court [was] unable to weigh the factors associated with determining whether leave should be granted." *Id.* at 9. The Court further held that "Real Action ha[d] not given the Court any basis for why justice requires these proposed amendments." *Id.*

### C. The Instant Motion

Real Action again seeks to add the sixteenth and seventeenth affirmative defenses:

**SIXTEENTH AFFIRMATIVE DEFENSE**
Plaintiff's claims are barred because Plaintiff's predecessor-in-interest, Advanced Tactical Ordnance Systems, LLC released Real Action Paintball, Inc. from all claims it had against it by operation of a certain Confidential Settlement Agreement and Mutual General Release ("Settlement Agreement") that released a partner of Real Action, Conrad Sun. Because Plaintiff is asserting claims that it alleges to have acquired from Advanced Tactical Ordnance Systems, LLC, those claims do not exist because Advanced Tactical Ordnance Systems, LLC released Real Action. Because Plaintiff's claims against defendant K.T. Tran are predicated on him being vicariously liable for claims against Real Action Paintball, Inc. those claims are also subject to this defense of release.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
One or more of Plaintiff's claims is barred by the applicable statute of limitations, including the two-year statute of limitations for claims under the Lanham Act, because the operative facts pleaded in the Complaint occurred more than two years before ATO and UTS filed their complaints against Real Action Paintball, Inc. and K.T. Tran.

Second Proposed FAA at 34-35, Dkt. No. 355-1.

## DISCUSSION

### A. Federal Rule of Civil Procedure 15

#### 1. Legal Standard

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave," though the court "should freely give leave when justice so requires."

3

Fed. R. Civ. P. 15(a)(2). "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under *Rule 15(a)* in favor of granting leave to amend." *Id.* at 1052 (emphasis in original). "Denials of motions for leave to amend have been reversed when lacking a contemporaneous specific finding by the district court of prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987).

2. Analysis

a. *Undue Delay*

"[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 665 F.2d 977, 980 (9th Cir. 1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). However, undue delay combined with other factors may warrant denial of leave to amend. *See, e.g.*, *Jackson*, 902 F.2d at 1387-89 (holding that prejudice and undue delay are sufficient to deny leave to amend); *Morongo Band of Mission Indians*, 893 F.2d at 1079 ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant").

A moving party's inability to sufficiently explain its delay may indicate that the delay was undue. *Jackson*, 902 F.2d at 1388. Whether the moving party knew or should have known the facts and theories raised in the proposed amendment at the time it filed its original pleadings is a

4

1 relevant consideration in assessing untimeliness. *Id.* "[L]ate amendments to assert new theories
2 are not reviewed favorably when the facts and the theory have been known to the party seeking
3 amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists &*
4 *Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). "At some point, . . . a party may not
5 respond to an adverse ruling by claiming that another theory not previously advanced provides a
6 possible [ground] for relief and should be considered." *Ascon Prop., Inc. v. Mobil Oil Co.*, 866
7 F.2d 1149, 1161 (9th Cir. 1989) (quotation marks omitted).

Real Action argues it diligently sought amendment because the Court's FAA Order "informed Real Action that more information was needed[.]" Mot. at 8. Real Action thereafter "negotiated the deposition of [Counter-Defendant] Tyler Tiberius, which concluded on December 20, 2016." *Id.* Real Action did not receive the transcript of Tiberius' deposition until January 24, 2017 (*id.*); it filed this Motion two days later.

Real Action contends it "was not able to confirm that ATO knew that Real Action was [Conrad] Sun's partner until it took the deposition of Tyler Tiberius December 20, 2016, and received the final deposition transcript on January 24, 2017." Mot. at 6; *see id.*, Ex. 2 ("Tiberius Dep.") at 10:6-11:5. Real Action argues that "[b]ecause ATO cannot now deny that it knew of the Real Action–Sun partnership, Real Action has now confirmed that the defense of 'release' is available to it." *Id.* There is evidence that Real Action has known the precise terms of the confidential Settlement Agreement since at least 2015, when Real Action filed the Settlement with the Court. *See* Dkt. No. 131-4 (Settlement Agreement) ¶ 11. Real Action "cannot credibly claim to have not become aware of its own business dealings with Conrad Sun nor the content of its own filings in this action until the deposition of Mr. Tiberius." Opp'n at 7. Real Action does not address this argument in its Reply, nor does it explain why confirming ATO's knowledge of the partnership was necessary prior to asserting this affirmative defense. Indeed, as Real Action presumably was aware of its partnership with Conrad Sun, and given that Real Action knew the terms of the Settlement and its Release as early as 2015, the Court cannot find Real Action has diligently sought to add the proposed Sixteenth Affirmative Defense.

Real Action also cannot assert that Tiberius' deposition revealed facts that form the basis

of its proposed Seventeenth Affirmative Defense, that is, that the Lanham Act's two-year statute of limitations bars unspecified claims. *See* Second Proposed FAA at 35. UTS filed its Complaint on September 5, 2014—more than two years before Real Action filed this Motion. *See* Compl., Dkt. No. 1. At that point, Real Action knew UTS' Lanham Act claims were based on events that allegedly took place as early as 2012. Real Action argues that "[t]he allegations in UTS's *Complaint* do not state all the dates of Real Action's complained-of actions, so discovery was required to identify the facts. The discovery revealed that there were no acts of Real Action giving rise to certain of UTS's claims except that occurred before the statute of limitations cut-off date." Reply at 3 (emphasis in original). Tiberius' deposition may have confirmed this; however, the Complaint put Real Action on notice that the statute of limitations may apply. Even if the Complaint does not identify each relevant date, Real Action should have been aware of the possibility that UTS' claims fell outside the two-year statute of limitations. *See e.g.*, *id.* ¶ 2 ("On January 9, 2012, ATO acquired all of the assets of PepperBall Technologies, Inc. (f/k/a Jaycor Tactical Systems., Inc.) when it purchased and foreclosed on PepperBall Technologies, Inc.'s outstanding notes. Plaintiff and its predecessors have sold and continue to sell PepperBall® Projectiles and related PepperBall® branded equipment to customers across the United States and around the world."); *id.* ¶ 12 ("Unbeknownst to ATO at the time it was contemplating purchasing and foreclosing on PepperBall Technologies, Inc., in 2011-2012, Sun had begun misappropriating PepperBall Technologies, Inc.'s trade secrets and had attempted to recruit PepperBall Technologies, Inc.'s personnel to join a competitor he planned to form to compete with ATO."); *id.* ¶ 19 ("During the second week of August 2012, ATO's officers . . . received an email from Defendant [Real Action] which claimed that [Real Action] was selling PepperBall® projectiles."). As such, Real Action could have asserted a statute of limitations defense in its first Answer, the Court cannot find Real Action did not unduly delay in seeking to add a Seventeenth Affirmative Defense.

"Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999). But absent

another basis for denying leave to amend, "courts have generally granted leave to litigants even though they should have anticipated 'the facts and theories raised by the amendment' at an earlier stage in the litigation, and cannot otherwise justify their delay in seeking leave to amend." *Dep't of Fair Empl't & Hous. v. Law Sch. Admission Council, Inc.*, 2013 WL 485830, at *4 (N.D. Cal. Feb. 6, 2013) (quoting *Jackson*, 902 F.2d at 1388; collecting cases). Courts instead require undue delay coupled with some showing of prejudice to justify denying leave to amend. *Id.* (collecting cases).

### b. *Bad Faith*

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early. *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). "Leave to amend may be denied where the amendment is introduced to cause a delay in proceedings or for some other improper purpose. *Johnson v. Serenity Trans., Inc.*, 2015 WL 4913266, at *4 (N.D. Cal. Aug. 17, 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

UTS does not argue substantively that the Motion is brought in bad faith. *See id.* (placing burden of demonstrating bad faith on party opposing amendment). But the Court cannot ignore the fact that Real Action knew or should have known the bases for its Sixteenth and Seventeenth Affirmative Defenses at least two years ago, if not longer. While there are not enough facts before the Court to affirmatively find Real Action acted in bad faith, nor can the Court find this factor favors amendment.

### c. *Prejudice to the Opposing Party*

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight" in determining whether to allow amendment. *Eminence Capital*, 316 F.3d at 1052. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend[.]" *Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999) (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)).

UTS argues it would be prejudiced if Real Action is permitted to amend its Answer, as this

would require additional discovery, time, and expense. Opp'n at 8. Since Real Action filed its Motion, fact discovery has closed. *See* Am. CMO, Dkt No. 362. The need to reopen discovery would further delay proceedings, which would prejudice UTS. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming trial court's denial of leave to amend where amendment would require further discovery, would have delayed proceedings, and thus would have prejudiced opposing party); *Lockheed Martin Corp.*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend."). The Court finds this factor weighs against amendment.

### d. *Futility of Amendment*

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.*

At this point, it is not readily apparent the proposed Sixteenth and Seventeenth Affirmative Defenses are futile. As such, this factor favors amendment.

### e. *Previous Amendments*

Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citing *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999). In *Chodos*, the Ninth Circuit affirmed the district court's denial of leave to amend when the party knew of the factual basis for the amendment prior to a previous amendment. 292 F.3d at 1003. Further, a party that contends it learned "new" facts to support a claim should not assert a claim that it could have pleaded in previous pleadings. *Edwards Lifesciences LLC v. Cook Inc.*, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (citing *Chodos*, 292 F.3d at 1003).

The Court has not previously granted Real Action leave to amend. As such, this factor weighs in favor of amendment.

3. <u>Summary</u>

The Court finds Real Action's delay in seeking amendment weighs against amendment. The bad faith factor is neutral in the Court's analysis; the remaining factors favor amendment. The Court next considers whether Real Action's Motion complies with Rule 16 and the Civil Local Rules.

**B.     Federal Rule of Civil Procedure 16**

1. <u>Legal Standard</u>

Rule 16 requires the Court to issue a scheduling order as soon as practicable. Fed. R. Civ. P. 16(b)(1). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The Civil Local Rules of this District further provide that

> [b]y serving and filing a motion with the assigned judge pursuant to Civil L.R. 7, a party, including a party added later in the case, may seek relief from an obligation imposed by Fed. R. Civ. P. 16 or 26 or the Order Setting Initial Case Management Conference. The motion must:
> (1)  Describe the circumstances which support the request;
> (2) Affirm that counsel for the moving party has conferred with all other counsel in an effort to reach agreement about the matter and, for each other party, report whether that party supports or opposes the request for relief;
> (3) Be accompanied by a proposed revised case management schedule; and
> (4) If applicable, indicate any changes required in the ADR process or schedule in the case.

Civ L.R. 16-2(d).

2. <u>Analysis</u>

When it issued its Case Management Order ("CMO"), the Court set a deadline of July 14, 2016 for the parties to amend pleadings. CMO, Dkt. No. 218. Whereas Real Action first moved to amend prior to the amended pleadings deadline, it filed the instant Motion approximately six months after the deadline. Because Real Action seeks to amend its Answer beyond the deadline set in the CMO, Rule 16 and Local Rule 16-2 apply. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 2014 WL 12647875, at *1 (N.D. Cal. Sept. 3, 2014) ("Since this motion was filed after the court-imposed deadline for amendment to the pleadings . . . ,

9

[p]laintiff must initially demonstrate sufficient 'good cause' to modify the scheduling order." (citing *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 607-608 (1992)).

Real Action offers no evidence that it complied with Local Rule 16-2(d). In fact, counsel for UTS declares Real Action's counsel did not meet and confer with UTS prior to filing this Motion. Glaspy Decl. ¶ 4, Dkt. No. 340-1. Real Action does not address, let alone dispute, this assertion in its Reply. *See* Reply. In addition, Real Action does not argue good cause exists for amendment. *See id.*; Mot. As such, the Court cannot find Real Action's Motion complies with the Federal Rules of Civil Procedure or the Local Civil Rules.

## CONCLUSION

In sum, the Court finds Real Action unduly delayed in seeking amendment and that amendment at this stage would be prejudicial to UTS. Moreover, Real Action's Motion does not comport with Rule 16 or Civil Local Rule 16-2. Under these specific circumstances, the Court cannot find amendment is proper. Accordingly, the Court **DENIES** Real Action's Renewed Motion for Leave to File a First Amended Answer.

**IT IS SO ORDERED.**

Dated: May 8, 2017

MARIA-ELENA JAMES
United States Magistrate Judge